ANNA BARTSCH DUNNE *v.* STATE OF
MARYLAND.

[No. 34, January Term, 1932.]

*DecidedApril 8th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*E. Barrett Prettyman,* with whom were *P. C. King, Jr., Preston B. Kavanagh,* and *Butler, Pope, Ballard & Loos,* on the brief, for the appellant.

*Roger J. Whiteford,* with whom were *Wm. Preston Lane, Jr., Attorney General, Robert H. Archer, Assistant Attorney General,* and *Joseph C. Cissel,* on the brief, for the State.

Diggs, J., delivered the opinion of the Court.

This case comes before us on appeal by Anna Bartsch Dunne from an order of the Circuit Court for Montgomery County sustaining a demurrer interposed by the State of Maryland to a paper writing filed by the appellant in that court. While the paper writing in question is somewhat lengthy, a proper consideration as to its character and purport requires that its pertinent provisions be fully stated. They are:

"No. 18 Appearances. Nov. Term, 1931. Anne Bartsch Dunne v. The State of Maryland. State of Maryland, Montgomery County, to wit: Anna Bartsch Dunne, by her attorneys, E. Barrett Prettyman and Preston C. King, Jr., and proceeding under the provisions of section 40 of article 91 of the Code of Maryland, sues the State of Maryland, for that, on, to wit, June 21, 1928, and for some time prior thereto, said Anne Bartsch Dunne was the owner, in fee simple, of the following described land, lying in Montgomery County Maryland." (Then follows a detailed description of the property.) "And that the State of Maryland, through its agent, the State Roads Commission, exercising its power of eminent domain, on, to wit, June 21, 1928, took possession of and appropriated for public use the aforesaid land belonging to said Anna Bartsch Dunne for the purpose of widening certain existing roads, to wit, Brookeville and Colesville Pikes, and thereafter the State of Maryland, acting through its said agent, the State Roads Commission, laid out and opened upon the said land a public road, and that in so doing said State of Maryland completely changed the character and contour of said land by grading, excavating and covering it with concrete so that it cannot be restored to its original character and contour, and that for the purpose of widening the existing roads, and laying and opening upon the said land a public road as aforesaid, the State of Mary-

land, through its agent, the State Roads Commission, cut down, removed and destroyed certain fences, hedges, trees and shrubbery then being upon said land and belonging to said Anna Bartsch Dunne; that the amount of damages suffered by said Anna Bartsch Dunne by reason of the aforesaid taking and appropriation, being just compensation for the property thus taken and appropriated, was the sum of Fifty-three Thousand Five Hundred Seventy-six Dollars and Fifty-four Cents ($53,576.54); that in violation of the Constitution of Maryland and the Fourteenth Amendment of the Constitution of the United States of America, no condemnation proceedings or any other proceedings of any sort were had respecting the taking and appropriation of the aforesaid land and/or property; that said Anna Bartsch Dunne was not afforded any opportunity whatsoever to be heard in respect to the aforesaid taking and appropriation of the aforesaid land and/or property; that said Anna Bartsch Dunne did not consent or agree, in any manner whatsoever, directly or indirectly, to the aforesaid taking and appropriation of the aforesaid land and/or property without compensation therefor; that said Anna Bartsch Dunne has not been paid or tendered any compensation whatsoever in any manner by the State of Maryland or any of its agents or by any other person or persons for the taking and appropriation of the aforesaid land and/or property; that the aforesaid agent of the State of Maryland, the State Roads Commission, did not cause to be prepared any report, either preliminary or final, or any plat or plats, showing either the description, quantity and/or nature of the property taken, the amount of damages awarded therefor, the amount of benefits assessed to the adjoining land, the names of the persons interested in the property taken or benefited with their respective estates and interests therein, and/or the damages and benefits awarded or assessed to each; that said State Roads Commission did not by advertisement inserted in any newspapers published in the County where the land lies, give notice to the parties interested that such reports were open to inspection at the office of the Commission or that such

reports had been deposited with the clerk of the circuit court of the county in which the property taken lies; that the State of Maryland has consented to be sued in this court in these proceedings in respect to the subject-matter herein involved, such consent appearing in section 40 of article 91 of the Code of Maryland; that said Anna Bartsch Dunne has no remedy in the premises other than in this proceeding. Wherefore, the premises considered, Anna Bartsch Dunne prays that process issue from this Honorable Court directing the State of Maryland to appear herein on or before the next appearance day, and that the Court shall require the State of Maryland to pay the costs of this proceeding in this court; and Anna Bartsch Dunne further prays that the court shall issue its order requiring the said State Roads Commission, agent of the State of Maryland, to pay into this court the sum of Fifty-three Thousand Five Hundred Seventy-six Dollars and Fifty-four Cents ($53,576.54), being the amount due to said Anna Bartsch Dunne, and that thereupon the Court shall order such sum to be paid from the court to the said Anna Bartsch Dunne; and Anna Bartsch Dunne further prays that if the said State of Maryland shall upon issuance of the process of this court fail to appear as summoned, the court shall issue its judgment and execution thereon against the said State of Maryland for the sum of fifty-three thousand five hundred seventy-six dollars and fifty-four cents ($53,576.54); and Anna Bartsch Dunne further prays for such other and proper relief as may be necessary or desirable in the premises."

The demurrer admits, for the purpose of this appeal, the statement of facts above alleged, but not any conclusions of law therein contained. It will be seen that the appellant alleges that the proceeding is instituted under the provisions of section 40 of article 91 of the Maryland Code; that she sues the State of Maryland; that she was, on June 21st, 1928, and had been for some time prior thereto, the fee simple owner of the land described; that the State of Maryland, through its agent, the State Roads Commission, exercising its power of eminent domain, on June 21st, 1928,

took possession of and appropriated for public use the said land of the appellant for the purpose of widening certain existing roads; that the State, acting through said agent, laid out and opened upon said land a public road, and by so doing changed the character and contour of the land by grading, excavating, and covering it with concrete, so that it cannot be restored to its original character and contour, and further cut down, removed, and destroyed certain fences, hedges, trees, and shrubbery then being upon said land belonging to the appellant; that the amount of damages suffered by the appellant by the taking and appropriation, being just compensation for the property taken, was the sum of $53,576.54; that, in violation of the Maryland Constitution and the Fourteenth Amendment of the Constitution of the United States, no condemnation proceedings or any other proceedings of any sort were had respecting the taking and appropriation of said property; that the appellant was not afforded any opportunity to be heard in respect to the appropriation of said property, and that she did not consent or agree in any manner whatsoever, directly or indirectly, to the taking and appropriation without compensation therefor; that she has not been paid or tendered any compensation by the State or its agents for the taking of said property. It is further alleged that the State Roads Commission, as agent of the State, did not do any of the acts prescribed by section 40 of article 91; that the State has consented to be sued in these proceedings in respect to the subject-matter therein involved, such consent appearing in said section 40 of article 91 of the Code; and that the appellant has no remedy other than in this proceeding. The writing then goes on to pray that certain things be done, substantially in the form of the prayers of a bill in equity, which are: (1) That the court issue process directing the State of Maryland to appear in the proceedings before the next appearance day, and that the court require the State to pay the costs of the proceeding in that court; (2) that the court issue its order requiring the State Roads Commission, agent of the State of Maryland, to pay into the court the sum of $53,576.54, being the amount

due to the appellant, and thereupon the court shall order such sum to be paid from the court to the appellant; (3) that if the State shall, upon the issuance of the process of this court, fail to appear as summoned, the court shall issue its judgment and execution thereon against the State for the sum of $53,576.54; and (4) such other and proper relief as may be necessary or desirable in the premises.

This is certainly a novel proceeding in this State, and we have been referred to none elsewhere in any way analogous. Nevertheless, if the proceeding is a legal one, its novelty can constitute no ground for its rejection. The proceeding institutes a suit against the State of Maryland, and it needs no citation of authority to hold that this cannot be done unless consent has been given by the sovereignty. This is admitted by the appellant; but her contention is that the necessary consent has been given by the State in the enactment of section 40 of article 91 of the Code. The text of that section is:

"Whenever, for the purpose of building a new road or widening any existing road or crossing the tracks of any railroad, it shall become necessary to condemn any land or water or any interest in, under or over the same which the State Roads Commission is authorized to acquire under the preceding sections of this article, it shall and may be lawful for said commission to proceed as follows: The commission shall cause to be prepared a preliminary report, with such plat or plats as may be necessary and showing: (a) The description, quantity and nature of the property to be taken; (b) the amount of damages awarded therefor; (c) the amount of benefits assessed to the adjoining land (which shall not exceed the damages awarded and costs of condemnation), and which in case of a railroad crossing shall be governed by the section of this sub-title for such cases provided; (d) the names of the persons interested in the property taken or benefited, with their respective estates and interests therein (and if any such estates or interests shall belong to the unknown heirs of any deceased owner, the report shall so state); (e) and the damages and benefits awarded or assessed

to each. Upon completion of such report the State Roads Commission shall, by an advertisement inserted twice successively in one or more newspapers published in the county where the land lies, give notice to the parties interested (naming them) that such preliminary report is open to inspection at the office of the commission, and that during a period of fifteen days from the date of the first publication of such notice the commission will hear objections and make such corrections as may be proper. After the expiration of said period of fifteen days a final report, including such plat or plats as may be necessary, shall by the commission be deposited with the clerk of the circuit court for the county in which the property to be taken lies; and thereupon the commission shall, by advertisement inserted three times successively in one or more newspapers published in said county, give notice to the parties interested (naming them) that such final report has been deposited, and that after the expiration of twenty-one days from the date of the first publication the said report will become (and the same shall become) absolute and final as against all persons who shall not in the meantime have appealed therefrom to such circuit court. Every such appeal shall, upon order of the appellant's attorney be docketed as a separate case in the name of the appellant against the State of Maryland. Accompanying such order shall be a statement of the grounds upon which the appeal is based, and every such appeal shall be heard as promptly as may be on such day as the court shall fix. The appellant shall be entitled to have the amount of his damages or benefits assessed by a jury, and shall have the right to appeal to the Court of Appeals on any question of law involved. At every such inquisition the State shall proceed as if party plaintiff, and the costs in the circuit court shall be paid by the State. If no such appeal from the report of the commission shall be taken, or when all such appeals have been finally disposed of, it shall be lawful for the State Roads Commission (if for any reason such course may become necessary) to pay into court, under an order of the judge thereof, the amount due to any person in interest, and there-

upon the title to the property so paid for shall be vested in the State of Maryland. In addition to publishing the notice of the preliminary report herein provided for, the commission shall cause a printed copy of such notice to be mailed to the persons interested, so far as their postoffice addresses are known or can reasonably be ascertained; provided, however, that such action shall not be deemed a pre-requisite to the validity of the proceeding. If any of the parties in interest residing in this state are within the age or *non compos mentis* or other contractual disability and are not represented by a guardian, committee or trustee, it shall be the duty of the commission to certify such fact to the court at the time of filing its final report, and thereupon the court shall make such order for the protection of the rights of such person under disability as may be proper."

Section 40 is a section of the subtitle "Public Roads" of article 91, and it is to be noted that it provides that whenever the State Roads Commission is authorized, under the preceding sections of article 91, to acquire land for the purpose of building a new road or widening an existing road, "it shall and may be lawful for said commission to proceed as follows." It authorizes the State Roads Commission to acquire the necessary property in the manner prescribed in that section, but does not compel or obligate it to proceed thereunder; nor is it the exclusive method, for, by the provisions of section 28 of article 91, the State Roads Commission may "acquire for the State of Maryland, by agreement, gift, grant, purchase or condemnation proceedings as prescribed by sections 203 to 209, inclusive, or by sections 331 to 337, inclusive, of article 23 of the Annotated Code of Public General Laws, any private road or roads whatsoever, or private property or rights of drainage for public use, whether belonging to private individuals or to turnpike companies or other corporations, and including any avenues, roads, lanes or thoroughfares, rights or interests, franchises, privileges or easements, that may be, in its judgment, desirable or necessary to complete said system of roads to carry out the purpose of this act."

Sections 203 to 209, inclusive, of article 23 fix the procedure to be followed by railroads in condemnation proceedings; and sections 331 to 337, inclusive, of article 23 provide a procedure for condemnation by other corporations incorporated under the laws of Maryland, which are authorized to acquire land by condemnation. Both of these procedures, that is to say, condemnation by railroads and other corporations, have been superseded by the enactment of article 33A of the Code, title "Eminent Domain." Article 33A does not exclude the use of those two modes of procedure when the condemnation is for highway purposes, because by the explicit terms of section 15 of article 33A it is: "Provided, however, that nothing in this article contained shall apply to or change the present law or procedure for the opening, closing, widening or straightening of highways." This court has had occasion to pass upon the effect of the quoted exception. *Brady v. Road Directors of Allegany County,* 148 Md. 493, 129 A. 682; *Hubbard v. Baltimore,* 158 Md. 46, 148 A. 128; *Koehler v. State Roads Commission,* 125 Md. 444, 94 A. 16. In the last-mentioned case the State Roads Commission instituted condemnation proceedings under the provisions of chapter 141 of the Acts of 1908, being now section 28 of article 91 of the Code. Objection was there made that the proceedings were null and void for the reason that the method of condemnation employed had been repealed by article 33A of the Code; and it was expressly held, construing and applying the language of the exception contained in section 15 of article 33A, that that article in no wise impaired, affected, or changed the procedure provided in section 28 of article 91 of the Code, when property was sought to be condemned for highways. It is therefore clear that all of the methods of procedure for condemning property for highway purposes by the State Roads Commission, contained in article 91 of the Code, are in full force and effect and may be resorted to by the State Roads Commission.

The paper writing of the appellant first alleges that the State of Maryland, through its agent the State Roads Commission, exercising its power of eminent domain, appropri-

284

ated for public use the appellant's property; and later alleges that, in violation of the Constitution of Maryland and the Fourteenth Amendment of the Constitution of the United States, no condemnation or any other proceedings of any sort were had respecting the taking and appropriation of the aforesaid property. In effect, the contention by the appellant is that because the State Roads Commission, a state agency, appropriated her property, it was exercising the State's right of eminent domain, even though no act had been done by the State Roads Commission in respect to condemning the property and paying just compensation therefor. By the Constitution, its organic law, the State declared: "The General Assembly shall enact no law authorizing private property to be taken for public use, without just compensation as agreed upon between the parties, or awarded by a jury, being first paid or tendered to the party entitled to such compensation." *Maryland Constitution,* art. 3, sec. 40. Recognizing and complying with this constitutional mandate, in every act prescribing a method of acquiring private property for public use by condemnation, the Legislature has provided a procedure by which to the owner of the property so taken just compensation should be awarded; what constitutes just compensation, in cases other than by agreement, to be determined by a jury. Neither the State nor any agency thereof can exercise the right of eminent domain except by condemnation proceedings wherein compensation is determined, and that compensation paid, tendered, or secured to the property owner; and title to any such property sought to be so taken does not pass from the owner until such payment be made or secured. *Johnson v. Baltimore,* 158 Md. 93, 148 A. 209, 66 A. L. R. 1488; *Marchant v. Baltimore,* 146 Md. 513, 126 A. 884.

As heretofore stated, the rule that a state is immune from suit unless it consents to be sued is of universal application. The "state" spoken of in this rule "itself is an ideal person, intangible, invisible, immutable. The government is an agent, and, within the sphere of the agency, a perfect representative; but outside of that, it is a lawless usurpation. * * *

It is also true, in respect to the state itself, that whatever wrong is attempted in its name is imputable to its government, and not to the state, for, as it can speak and act only by law, whatever it does say and do must be lawful. That which, therefore, is unlawful because made so by the supreme law, the constitution of the United States, is not the word or deed of the state, but is the mere wrong and trespass of those individual persons who falsely speak and act in its name." *Poindexter v. Greenhow*, 114 U. S. 270, 5 S. Ct. 903, 914, 962, 29 L. Ed. 185. To the same effect is the case of *Hopkins v. Clemson Agricultural College*, 221 U. S. 636, 31 S. Ct. 654, 656, 55 L. Ed. 890, wherein it is said: "Immunity from suit is a high attribute of sovereignty,—a prerogative of the state itself,—which cannot be availed of by public agents when sued for their own torts. The Eleventh Amendment was not intended to afford them freedom from liability in any case where, under color of their office, they have injured one of the state's citizens. To grant them such immunity would be to create a privileged class, free from liability for wrongs inflicted or injuries threatened. Public agents must be liable to the law, unless they are to be put above the law. For how 'can these principles of individual liberty and right be maintained if, when violated, the judicial tribunals are forbidden to visit penalties upon individual offenders * * * whenever they interpose the shield of the state ? * * * The whole frame and scheme of the political institutions of this country, state and Federal, protest' against extending to any agent the sovereign's exemption from legal process. * * * The many claims of immunity from suit have therefore been uniformly denied, where the action was brought for injuries done or threatened by public officers. If they were indeed agents, acting for the state, they—though not exempt from suit—could successfully defend by exhibiting the valid power of attorney or lawful authority under which they acted. *Cunningham v. Macon & B. R. Co.*, 109 U. S. 446, 452, 3 S. Ct. 292, 609, 27 L. Ed. 992, 994. But if it appeared that they proceeded under an unconstitutional statute, their justification failed, and their claim of im-

munity disappeared on the production of the void statute. Besides, neither a state nor an individual can confer upon an agent authority to commit a tort, so as to excuse the perpetrator. In such cases the law of agency has no application,—the wrongdoer is treated as a principal, and individually liable for the damages inflicted, and subject to injunction against the commission of acts causing irreparable injury." The Court then cites many cases in the Supreme Court in support of its above statement, and then adds: "Other cases might be cited which deny public boards, agents, and officers immunity from suit. But the principle underlying the decisions is the same. All recognize that the state, as a sovereign, is not subject to suit; that the state cannot be enjoined; and that the state's officers, when sued, cannot be restrained from enforcing the state's laws, or be held liable for the consequences flowing from obedience to the state's command. But a void act is neither a law nor a command. It is a nullity. It confers no authority. It affords no protection. Whoever seeks to enforce unconstitutional statutes, or to justify under them, or to obtain immunity through them, fails in his defense and in his claim of exemption from suit."

In the case of *Litchfield v. Bond,* 186 N. Y. 66, 78 N. E. 719, 724, which was a suit by the owner of property against the engineer of the state for trespass and damage to the property while establishing a boundary line between certain counties of the state under and by direction of an act of the Legislature, the defense was that it was an act of the state, and therefore the agents of the state were immune from suit. In denying that contention, the court said: "The state had no authority to do the acts complained of by the plaintiff. It did not assume to act under its power of eminent domain, or if it did, the attempted exercise of that power was unconstitutional because the statute relied upon to authorize it made no provision for compensation for the taking of private property. * * * The trespasses committed upon the plaintiff's land were not the acts of the state, but the unauthorized and unlawful wrongs of the defendants, who, although the agents

of the state within their sphere of duty, were naked usurpers in assuming to do that which the state could neither do nor authorize to be done, except in the exercise of its power of eminent domain; and that power, as we have seen, was either not attempted to be exercised at all, or if it was, the effort was fruitless because absolutely void."

Applying the principles enunciated in these authorities, the question presented here is narrowed to a determination whether or not the State Roads Commission, at the time of the alleged appropriation of appellant's property, was acting for the State in the exercise of the State's right of eminent domain. We are unable, from the allegations of the complaint, to decide that question in the affirmative. It is true that the allegation is made that the State, acting through its agent the State Roads Commission, was exercising its power of eminent domain; but without determining whether such an allegation is a statement of fact admitted by the demurrer to be true, or is a conclusion of law, in which last case it would not be admitted by the demurrer, we are of the opinion that other allegations in the complaint nullify the statement that the taking was under the power of eminent domain, for the pleader states "that in violation of the Constitution of Maryland and the Fourteenth Amendment of the Constitution of the United States, no condemnation proceedings or any other proceedings of any sort were had with respect to the taking and appropriation of the aforesaid land." Section 40 of article 3 of the Maryland Constitution has positively and definitely laid down the conditions under which private property can be taken for public use. The Legislature has passed procedural legislation by which the State Roads Commission can acquire property for highways; and in every form of such procedure there has been provided a method for gratifying and complying with the constitutional mandate. Therefore, if the State Roads Commission were acting under and by virtue of the State's right of eminent domain, it, of necessity, must follow one of the modes prescribed which meets the requirements of section 40 of article 3 of the State Constitution; and a taking or appropriation

by the State Roads Commission in any other manner is not the exercise, as agents for the State, of its power of eminent domain. The State, in the exercise of that power, can only act lawfully; and any taking of property alleged to have been made by an agency of the State, not done in the mode prescribed by law, is not the act of the State, but the unlawful usurpation by the individual taking or appropriating the property. The contention of the appellant seems to be that because her property was physically taken by the State Roads Commission, it must have been acting under the State's power of eminent domain, and that she can claim the benefit of the provisions of section 40 of article 91 of the Code, even though it is also alleged that the State Roads Commission has done no single act which that statute provides shall be done before she could appeal to the Circuit Court for Montgomery County. Neither the individuals who appropriated the property nor those constituting the State Roads Commission are immune from suit unless they can show that the act was that of the State, acting through them; and in order to do this, they must show that they proceeded in the manner prescribed by law, because it cannot be the act of the State unless it be in accordance with law.

If section 40 of article 91 was the only method by which property for highways might be condemned, the argument of the appellant might be entitled to greater consideration. But as pointed out, there are at least two other statutory procedures by which the State Roads Commission can acquire property for roads and highways. Giving the fullest effect to the appellant's contention that the act of appropriating the property was a step looking to the condemnation thereof by the State, exercising its power of eminent domain, this act, namely, the taking, could apply as well to the other methods of condemnation as to that provided for by section 40 of article 91. What we are asked to say is that it was a taking under the last-mentioned section; that although none of the provisions of that section were followed, nevertheless, because it could have been taken under that section, therefore it was. Courts should not hold that immunity from suit, one of the

highest attributes of sovereignty, has been waived, except in cases of positive consent given, or by necessary and compelling implication. The State does not have to give its consent to be sued in condemnation proceedings, and has not done so in the procedure prescribed, unless it be under the provisions of section 40 of article 91.

Has the State, under the provisions of section 40 of article 91, consented to be sued, either in positive language or by necessary and compelling implication? It is clear beyond controversy that the provisions of section 40 were enacted by the Legislature for the purpose of permitting the State Roads Commission to acquire property by condemnation for highway purposes, and determine what sum is just compensation to the owner for the taking. It was done in compliance with the constitutional mandate which prohibits the taking of private property for public use without the payment or tender of just compensation agreed to or ascertained by a jury. The act was passed upon the theory that in certain cases the compensation fixed by the commission would be accepted as just compensation by the owner, and provides minutely and explicitly what steps the commission shall take before the compensation found by it shall be final, among which are direct notice and notice by publication to the owner, at two different times. It then provides that after these, and all of these, preliminary requirements have been complied with, including notice to the owner, the report of the commission and the ascertainment of compensation therein made shall be final, unless the owner appeal from such finding.

This appeal by the owner is made by docketing a case against the State of Maryland in the circuit court of the county where the property lies, and where the final report has been filed by the commission, and filing a statement of the ground upon which the appeal is based, which appeal shall be heard promptly; and the appellant shall be entitled to have the amount of his damages or benefits assessed by a jury, and shall have the further right of appeal on questions

of law to the Court of Appeals. It further provides that "at every such inquisition the State shall proceed as if party plaintiff, and the costs in the circuit court shall be paid by the State." There is a further provision that if no such appeal from the report of the commission shall be taken, or when all such appeals have been finally disposed of, the State Roads Commission can pay into court, under an order of the judge, the amount found to be due any person in interest, and thereupon the title to the property so paid for shall be vested in the State of Maryland.

The consent in this case must be gathered from the provision that, upon appeal from the final .report of the State Roads Commission filed in court, a case may be docketed by the owner against the State of Maryland, and that in such proceedings the State shall pay the costs in the circuit court. If all the preliminary proceedings have been taken, the provisions just above referred to may or may not amount to consent of the State to be sued; but certainly that consent, if it be such, can only come into being in cases where the preliminary provisions of the act have been complied with. The State consents to be a party in a case involving an appeal from the finding of just compensation by the commission, and you can have no appeal, or any such appeal case, until the commission has filed its report, from which, and from which alone, an appeal is given. The appellant's complaint alleges that no such report has been filed, nor any proceeding provided for by section 40 taken; and there can be no appeal unless the commission has acted. The provisions of section 40 certainly do not constitute a consent by the State to be sued in an original proceeding, but only (if at all) on appeal from the final report of the commission, prepared in conformity with the provisions of the act.

Furthermore, this complaint of the appellant, following forms more applicable to a bill in equity than a suit at law, prays process against the State of Maryland, directing it to appear on or before the next appearance day; that it, by order, be required to pay the costs in that court; and, further, that the court shall issue its order requiring the State Roads

Commission, agent of the State of Maryland, to pay into the court the sum of $53,576.54, being the "amount due" the said appellant, and that thereupon the court shall order such sum to be paid from the court to the appellant; and, further, that if the State of Maryland fail to appear as summoned, the court enter judgment and issue execution thereon against the State of Maryland for the aforesaid sum. There then follows a prayer analogous to a general relief prayer in equity. The mere statement of the relief prayed is sufficient to demonstrate that the court would have no power, under any condemnation proceedings known to our law, including section 40 of article 91, under which the appellant alleges these proceedings are instituted, to grant any such relief. It would not be the finding of just compensation by the jury or by any legally authorized body, but, upon the failure of the State to appear, after process, the entering of an arbitrary judgment fixed by the appellant.

While it is not in the record, and our opinion is in no way based thereon, during the argument of the case in this court the writer inquired of counsel for the State what its position was on the merits, and was told that the State claimed title to the land by an agreement with a former owner. If this be true, it may, under requisite circumstances, present a question of title that can be determined by an action of ejectment against those individuals who unlawfully took and retained possession of the property. *Weyler v. Gibson,* 110 Md. 636, at page 654, 73 A. 261. Another remedy open to owners of property in the position alleged to be occupied by the appellant is that the State's agencies could be restrained from appropriating the property unless and until condemnation proceedings in accordance with law be had, and just compensation awarded and paid or tendered.

By the language of the declaration, this action was brought under the provisions of section 40 of article 91 of the Code; and the record and briefs have proceeded upon that theory. By chapter 539 of the Acts of 1931 (section 1), which act was approved April 17th, 1931, and took effect June 1st, 1931, sections 26 to 124 inclusive of article 91 of the Code,

title "Surveyor and State Survey," were repealed, and there was enacted in lieu thereof a new article, to be known as article 89B, entitled "State Roads." The provisions of the old section 28 of article 91 which are pertinent to the decision in this case were re-enacted by said chapter 539, and now appear as section 3 of the new article 89B; and old section 40 of article 91 was re-enacted and now appears as section 25 of article 89B; so that, wherever we have referred, throughout the opinion, to sections 28 and 40 of article 91, they were at the time of instituting the action, and now are, sections 3 and 25 of the new article 89B.

For the reasons stated, the order of the lower court sustaining the demurrer to the appellant's complaint will be affirmed.

*Order affirmed, with costs to the appellee.*