CALVERT ASSOCIATES LIMITED PARTNERSHIP
ET AL. *v.* DEPARTMENT OF EMPLOYMENT
AND SOCIAL SERVICES, EMPLOYMENT
SECURITY ADMINISTRATION

[No. 162, September Term, 1975.]

*Decided April 7, 1976.*

---

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ■ O'DONNELL, JJ.

*Christopher Sanger* for appellants.

*Amicus curiae* brief filed by Apartment and Office Building Association of Metropolitan Washington, Inc., *David Huddle, William P. Daisley* and *Michael C. Blackstone* on the brief.

*Joel J. Rabin, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Diana G. Motz, Assistant Attorney General,* on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

Appellants, Calvert Associates Limited Partnership *et al.* (Calvert), here seek to impinge upon the doctrine of

sovereign immunity. As they put it, however, they do "not advocate . . . that the doctrine of sovereign immunity be fully swept away by judicial decision," but rather they "urge that the Court hold the doctrine not applicable where the State . . . enters into purely private contracts with its citizens." For the reasons which we shall develop we are unable to accede to this point of view.

The facts are relatively simple. Leases were entered into between two limited partnerships and the State for space in Riverdale, Maryland, to be occupied by the Department of Employment and Social Services. The leases in each instance were on the standard lease form of the State of Maryland. In each instance someone placed a date prior to July 1, 1974, upon the leases. Each lease was for a term of one year "to commence on the first day of July, nineteen hundred seventy-four." Each lease was executed by the Executive Director of the Employment Security Administration and by the Secretary of the Department of Employment and Social Services. In one instance approval of the Board of Public Works was secured on August 20, 1974. In the other, such approval was on September 19, 1974. In neither instance did the State enter into occupancy prior to that approval. Calvert seeks rent from July 1, 1974. Pursuant to Maryland Rule 323 b the State filed a motion raising preliminary objection "on the ground that [it] has total governmental immunity against this action, and has not consented to filing thereof, or otherwise waived its immunity." With the motion there was submitted an affidavit from the Director of the Division of Budget and Finance of the Department of Employment and Social Services. It said that he was "responsible for supervising and approving the budget of the Department of Employment and Social Services," that he "must determine for which purposes funds in the budget may be spent and approve the expenditure of funds for purposes authorized by State and Federal law and disapprove expenditures for purposes not valid under those lawful requirements," and that, "[t]o the best of [his] knowledge and belief, there [were] no funds within the [then] current budget of the Department of

Employment and Social Services which c[ould] be used for payment of any recovery in [this] action or for the rent now claimed on the premises involved in the action." He further stated that "[s]uch expenditures would first have to be approved and the funds granted by the United States Department of Labor which funds the State programs . . . occupying the premises under the lease involved in this action." He also said in the affidavit that he was "unaware of any action taken by the Department of Labor toward such approval or granting of funds." The trial judge (Bowie, J.) granted the State's motion. We granted the writ of certiorari prior to consideration of Calvert's appeal by the Court of Special Appeals.

Calvert argues that "[i]n the realm of private affairs and private business relations, the State is entitled to no rights or privileges over and above those granted to others doing business in the private sector of the economy." It says that many states "which otherwise adhere to traditional concepts of sovereign immunity as passed down from English common law, have held as an exception to the doctrine that when authority is granted to the State and/or its agencies to enter into a contract, a concomitant of that authority must necessarily be a waiver of the State's power to deny a remedy for its own breach or violation thereof." Calvert further argues that "[e]ven if the Doctrine of Sovereign Immunity is held applicable to the private business transactions involved [in this proceeding], the State has consented to be sued on leases which it enters into, and [Calvert's] causes of action are therefore maintainable." On the issue of sovereign immunity it finally argues that the trial judge's "ruling . . . achieves an unjust and irrational result, is contrary to the best interests of the State and its citizenry, and cannot possibly be reflective of the intent of the Maryland legislature." It no doubt is frustrating to an individual dealing with the State to encounter a situation similar to that presented here and to not be able to have the courts adjudicate the dispute. As this Court has said on many occasions, however, the remedy lies not with the judiciary, but with the General Assembly since the General

Assembly has made it abundantly clear that suits against the State for damages are not permitted.

Joy would reign insofar as Calvert is concerned if we were to advise that we had discovered a statute in effect in Maryland stating "[t]hat any citizen of this State, having any claim against this State for money, may commence and prosecute his action at law for the same against this State as defendant," with juries to "try such issue or issues," and the further provision that if a jury should "find for the plaintiff, they may assess such damages as they may think just, and the same shall be paid by the State . . . ." Just such an act was passed by the General Assembly as Chapter 53 of the Acts of 1786. Were it still in effect, it obviously would afford relief to Calvert, but it was repealed by Chapter 210 of the Acts of 1820, thus providing the base for our many pronouncements that relief in the matter of sovereign immunity must come from the General Assembly, and not from the judiciary.

Thirty-eight years after the repeal of Chapter 53 of the Acts of 1786 the General Assembly demonstrated its continuing belief that power to sue the State must come from it when, as a prelude to *St. John's College v. State,* 15 Md. 330 (1860), it passed its Resolution No. 4 in 1858. Washington College, chartered by an act of the General Assembly in 1782, and St. John's College, chartered by such an act in 1784, were, as it was put in *St. John's College* at 341, "declared [by the General Assembly to be] one university by the name of the University of Maryland . . . ." Commitments were made for appropriations upon which the State ultimately reneged. Eighty-one years before the Uniform Declaratory Judgment Act was adopted in Maryland the General Assembly passed its Resolution No. 4 saying that the Governor was "authorised and required to cause such proceedings to be instituted as m[ight] be necessary to obtain the opinion of the Judges of the Court of Appeals of Maryland" as to whether the appropriation to St. John's College "constitute[d] a contract on the part of the State, under all the circumstances of the case, which could not be legally repealed" by the General Assembly and

whether the act of repeal was "in violation of the tenth section of the first article of the Constitution of the United States, which declares 'that no State shall pass any law impairing the obligation of contracts' " and whether the act in question "with the circumstances of the case constituted such a contract as would, if entered into between individual citizens be legally binding upon them . . . ." As our predecessors put it at page 332 of 15 Md., "[i]n causing the necessary proceedings to be instituted under this resolution, the Governor being advised that he ought to occupy the position in court of defendant, it was agreed and arranged with the Visitors and Governors of St. John's College, that if they would file their bill, setting forth fully, in detail, the grounds of their complaint against the State, the Governor would appear to the suit and on behalf of the State answer the bill, and the bill was accordingly then filed" in the Circuit Court for Anne Arundel County. The fact that this resolution was regarded as necessary to permit the litigation is clear evidence of the view of the General Assembly on the subject in 1858.

In *State v. Baltimore & O.R.R.*, 34 Md. 344 (1871), *aff'd* 21 Wall. 456, 22 L. Ed. 678 (1875), there was litigation between the State and that railroad relative to a tax said to be due the State in the amount of $500,000 on monies received by the railroad for the transportation of passengers between Washington and Baltimore. To the railroad's attempt to plead set-off, Chief Judge Bartol said:

"In actions instituted by the State, it is well settled that no right of set-off exists, unless in cases where such defense is expressly allowed by statute, for the reason that the State being sovereign is not liable to be sued by an individual or corporation.

"The right to sue the State was given by the Act of 1786, ch. 53, but this was afterwards repealed and the right taken away.

"This immunity belongs to the State by reason of her prerogative as a sovereign, and on grounds of public policy. Parties having claims or demands

against her, must present them through another department of the Government — the Legislature — and cannot assert them by suit in the courts. For the same reason a right of set-off against the State does not exist." *Id.* at 374.

In *Weyler v. Gibson*, 110 Md. 636, 73 A. 261 (1909), the Court permitted an action in ejectment against public officials who had improperly taken land for the Maryland Penitentiary. At page 654, however, it reiterated that "immunity of the State from suit rests upon grounds of public policy, and is too firmly fixed in our law to be questioned." *See also State v. Wingert*, 132 Md. 605, 611, 104 A. 117 (1918).

The doctrine of sovereign immunity as it exists in this State was recently summed up for the Court by Judge Digges in *Chas. E. Brohawn & Bros. v. Board*, 269 Md. 164, 304 A. 2d 819 (1973):

"The doctrine of sovereign immunity exists under the common law of Maryland. By this doctrine, a litigant is precluded from asserting an otherwise meritorious cause of action against this sovereign State or one of its agencies which has inherited its sovereign attributes, unless expressly waived by statute or by a necessary inference from such a legislative enactment. *Godwin v. County Comm'rs of St. Mary's Co.*, 256 Md. 326, 260 A. 2d 295 (1970); *Dunne v. State*, 162 Md. 274, 280, 159 A. 751 (1932). And in the absence of statutory authorization, neither counsel for the State nor any of its agencies may, 'either by affirmative action or by failure to plead the defense, waive the defense of governmental immunity . . . .' *Bd. of Education v. Alcrymat Corp.*, 258 Md. 508, 266 A. 2d 349 (1970). The doctrine of sovereign immunity or, as it is often alternatively referred to, governmental immunity, was before this Court in *University of Maryland v. Maas*, 173 Md. 554, 197 A. 123 (1938), where our predecessors reversed a judgment recovered against the University for breach of contract in connection

with the construction of a dormitory at College Park. That opinion, after extensively reviewing the prior decisions of this Court, succinctly summed up their holdings by stating: 'So it is established that neither in contract nor tort can a suit be maintained against a governmental agency, first, where specific legislative authority has not been given, second, even though such authority is given, if there are no funds available for the satisfaction of the judgment, or no power reposed in the agency for the raising of funds necessary to satisfy a recovery against it.' *Id.* at 559." *Id.* at 165-66.

Reasons for the doctrine were set forth by Judge Offutt for the Court in *Baltimore v. State,* 173 Md. 267, 195 A. 571 (1937):

"It is an elementary and firmly established principle of municipal law that the state cannot be sued in its own courts without its consent. 59 *C. J.* 300; *State v. Wingert,* 132 Md. 605, 104 A. 117; *State of Maryland v. Balto. & O. R. Co.,* 34 Md. 344, affirmed 21 Wall. 456, 22 L. Ed. 678. The reason for the immunity is that, to subject the state to the coercive control of its own agencies would not only be inconsistent with its sovereignty, but would so hamper and impede the orderly exercise of its executive and administrative powers as to prevent the proper and adequate performance of its governmental functions." *Id.* at 271.

Calvert's argument that the State has consented to be sued on leases which it enters into is based upon Code (1957, 1969 Repl. Vol.) Art. 78A, § 8. From the time of its initial enactment by Chapter 64 of the Acts of 1939 that section has stated:

"The Board of Public Works shall have the power and duty to approve every lease and renewal thereof of land, buildings or office space before the same is executed by any department, board,

commission, State officer or institution of the State, and shall have power to designate the location of any State agency, after review by the Director of Budget and Procurement."

By Chapter 509 of the Acts of 1967 this section was amended by numbering the quoted portion of the section as subsection (1), adding to it the words "subject to the provisions of subsection (2) of this section," and then providing a limitation in subsection (2) as to the rental that might be paid based upon the fair market value of the rented premises. In *Magruder v. Hall of Rec'ds Comm.*, 221 Md. 1, 155 A. 2d 899 (1959), Judge Horney referred for the Court, for the purposes of the opinion, to § 8 as the "location of agencies" statute. We think it was just that, calculated to give the Board of Public Works control over the location of agencies and the rent paid by agencies in the interest of the fiscal integrity of the State.

It must be borne in mind that in *Dunne v. State*, 162 Md. 274, 288, 159 A. 751 (1932), Judge W. Mitchell Digges said for the Court that "[c]ourts should not hold that immunity from suit, one of the highest attributes of sovereignty, has been waived, except in cases of positive consent given, or by necessary and compelling implication." In that case it was alleged that officials of the State Roads Commission had entered upon an individual's land for construction of a public road and that in so doing they had "completely changed the character and contour of said land by grading, excavating and covering it with concrete so that it [could] not be restored to its original character and contour," all without condemnation or any deed from the plaintiff in that proceeding. It was apparent that a dispute as to title was involved. The Court refused to find consent on the part of the State to be sued. It did suggest the possibility of an action in ejectment under *Weyler* or "that the State's agencies could be restrained from appropriating the property unless and until condemnation proceedings in accordance with law be had, and just compensation awarded and paid or tendered." We do not view Art. 78A, § 8 as constituting positive consent on the part of the State to be

sued, as required under *Dunne,* nor from Art. 78A, § 8, and the circumstances of this case do we find any necessary and compelling implication of consent for suit.

Our point of view that specific consent of the State in the form of a legislative enactment is necessary in order for the State to be sued is strengthened by the fact that the General Assembly at its 1974 session passed House Bill No. 5 which would have added a new section to Code (1957, 1971 Repl. Vol., 1973 Cum. Supp.) Art. 41 to provide that "unless otherwise specifically provided by the laws of Maryland, the State of Maryland, and every officer, department, agency, board, commission, and other unit of government of the State of Maryland, is liable in any action of contract, and may not raise the defense of sovereign immunity, for any contract made by the State, or any officer, department, agency, board, commission or other unit of the government of the State." The bill was vetoed by the Governor. It thus becomes abundantly plain that the General Assembly has concurred in our long standing view that a specific legislative enactment is necessary in order to maintain a suit against the State.

Calvert's final argument is that by Counts III and IV of the amended declaration it "sought recompense from the State upon the grounds that [the State] had, by its actions as alleged, effectively condemned the subject leaseholds . . . without paying . . . just compensation (or any compensation, for that matter) for such taking." Calvert suggests that Code (1974) §§ 12-101 *et seq.,* Real Property Article, make it clear that the State has the power of eminent domain, which it says is in no way insulated by sovereign immunity, a point recognized in *Dunne.* It then calls attention to our decision in *Hardesty v. State Roads Comm'n,* 276 Md. 25, 343 A. 2d 884 (1975), and says that "[t]he circumstances underlying the *Hardesty* rule are closely analogous to those in the case at bar." We disagree. The State Roads Commission proceeded under its "quick take" powers in *Hardesty.* It deposited the sum of $23,600 in court, the estimated fair market value of the property rights to be acquired. It sought a scenic easement. The funds deposited were withdrawn by

Hardesty. The State then endeavored to abandon its attempted acquisition and to obtain return of the money from Hardesty, which was resisted by Hardesty. The circuit court permitted abandonment and required the property owners to return the money withdrawn. Chief Judge Murphy for the Court "conclude[d] that Hardesty was deprived of the full use and enjoyment of his property by the Commission's action to a degree sufficient to constitute a taking within the contemplation of § 12-102 of the Real Property Article," and that the Commission could not "totally abandon the condemnation proceedings it initiated on August 1, 1973." The case was remanded for further proceedings with the suggestion that "[a]lthough the Commission m[ight] not be precluded in the circumstances of th[at] case from undertaking to amend the extent of its taking of Hardesty's property rights . . . to a scenic easement of less than perpetual duration, it w[ould] in any event be required to pay compensation for the fair value of those property rights [t]heretofore actually taken for public purposes." Calvert here voluntarily entered into a lease with the State. We suspect that Calvert, like many landlords, may have regarded the State as a highly desirable tenant. There is not the slightest indication or suggestion that the State in any way forced itself upon Calvert. The State did not enter into possession prior to approval of the lease by the Board of Public Works. In this case there simply was no taking by the State. If there were, then *Dunne* would be authority for not permitting suit against the State to recover damages.

*State v. Dashiell,* 195 Md. 677, 75 A. 2d 348 (1949), relied upon in the brief amicus curiae filed on behalf of Apartment and Office Building Association of Metropolitan Washington, Inc., in no way compels a conclusion favorable to Calvert. In that case the State itself instituted a declaratory judgment action to ascertain what, if any, obligations it might have under the peculiar circumstances involved with that particular contract, intertwined as it was with the various controls promulgated by the Federal Government upon the end of World War II.

In sum, we hold that since there has been no consent by

the State to suit against it the action of the trial judge must be affirmed.

*Order affirmed; appellants to pay the costs.*