ELVINA BUGG ET AL. *v.* MARYLAND TRANSPORTA-
TION AUTHORITY ET AL.

[No. 1058, September Term, 1975.]

*Decided June 7, 1976.*

The cause was argued before GILBERT and MENCHINE, JJ., and PHILIP M. FAIRBANKS, Associate Judge of the Sixth Judicial Circuit, specially assigned.

*Charles P. Howard, Jr.,* with whom were *Howard, Goslee & Kemp* on the brief, for appellants.

*Judson P. Garrett, Jr., Assistant Attorney General* and *Daniel H. Bathon, Special Attorney,* with whom were *Francis B. Burch, Attorney General* and *J. Michael McWilliams, Assistant Attorney General and Counsel to the Department of Transportation,* on the brief, for appellees.

GILBERT, J., delivered the opinion of the Court.

Since 1960, Pink Bugg and Elvina Bugg have been involved in a controversy over 12.5 acres of land condemned by the erstwhile State Roads Commission and upon which part of the John F. Kennedy Expressway is now situated.

The Court of Appeals, in *Bugg v. State Roads Comm'n,* 250 Md. 459, 243 A. 2d 511 (1968), opined, "This case marks the end of a long trail which Mr. and Mrs. Bugg have travelled for some eight years." 250 Md. at 460. The seeming tolling of the knell for the "Bugg-State Roads" controversy was, in the words of the late Samuel Langhorne Clemens (Mark Twain), "greatly exaggerated." [1]

Because of its informative value as background for the instant litigation, we deem it advisable to quote the recitation of facts set forth by the Court of Appeals in *Bugg v. State Roads Comm'n, supra:*

> "Some time prior to June 1960, the Buggs purchased at a tax sale in Cecil County certain property located in the county which was assessed

---

1. Embodied in a cable from London, England, in 1897 to the Associated Press, the full text read: "The reports of my death are greatly exaggerated."

to the estate of William Cooper. While there is a suggestion that the property which was sold approximated two acres, when the Buggs instituted an equity proceeding in Cecil County to foreclose any right of redemption to the land which they had purchased, it seems that Mr. Bugg took a surveyor to the property which he thought he had purchased and indicated what he believed to be the boundaries. The surveyor prepared a description and the Buggs ultimately received a deed signed by the county treasurer which conveyed to them the tract covered by the description, containing 14.16 acres. Since the record in that case is not before us, there is no way to shed light on this anomaly.

In about 1962, the State Roads Commission (the Commission) having determined that 12.5 acres of the tract were required for the construction of the Northeastern Expressway, instituted proceedings for the acquisition of the required acreage in the Circuit Court for Cecil County and deposited the sum of $3,125, which the Commission believed to be the fair value of the property. Presumably as a result of the Commission's title examination, Charles McKeever, Marie K. McKeever, Dorothy M. Shivery and R.E. Shivery were named as defendants, together with Mr. and Mrs. Bugg. Later, it was determined that Marie K. McKeever had died, leaving as her heirs at law her children, Charles McKeever and Dorothy M. Shivery, the latter being the wife of R.E. Shivery.

Subsequent to the filing of the Commission's suit, Mr. McKeever and Mrs. Shivery brought action in ejectment against Mr. and Mrs. Bugg in Cecil County. The case was removed to and tried by the Circuit Court for Kent County and resulted in a verdict against the Buggs. In that case, in which Mr. and Mrs. Bugg were represented by counsel, Mr. McKeever and his sister were able to satisfy the court that the 14.16 acre tract had been owned by

one Philip Smeltzer; that they had acquired the property from the heirs of Philip Smeltzer; and that Mrs. Shivery had paid the taxes on the property from 1957 to 1961. The court properly concluded that a tax sale of property on which taxes have been paid is invalid, . . . and may be the subject of collateral attack if the court lacks jurisdiction over the subject matter . . . .

As a consequence of Mr. McKeever's and Mrs. Shivery's victory in the ejectment suit, the Commission amended its petition in the condemnation suit, eliminating all defendants other than Mr. McKeever and Mrs. Shivery, with the result that they received the $3,125 deposited with the court clerk in connection with the taking.

There is an intimation, which the record before us neither confirms nor explains, that Mr. Bugg may have paid taxes on the 14.16 acre tract from the time of the tax sale until the Commission's taking, and he testified below that he has been paying taxes on the 1.66 acre parcel which remained after 12.5 acres had been taken. Resolute in the pursuit of their claim, the Buggs, on 26 May 1967, brought a suit in Cecil County against the Commission in which they sought to eject the Commission from the 14.16 acres or alternatively, to require the Commission to answer in damages. The Commission moved to dismiss, on the ground that the verdict in the Cecil County ejectment suit was determinative of the Buggs' rights. The Buggs countered with the contention that the Cecil County case only validated the McKeever-Shivery title as to the 12.5 acres taken in condemnation, leaving a 1.66 acre parcel still titled in the Buggs. It was from the order dismissing the Buggs' suit that this appeal was taken." 250 Md. at 460-61.

We glean from the record that the Buggs reopened the prior case and demonstrated, to the satisfaction of the trier

of fact, that the Buggs were indeed the true owners, in 1960, of the land in controversy. The treasurer of Cecil County was apparently directed to execute a new deed to the Buggs. The deed, dated August 25, 1972, recites that it was made pursuant to a decree of the Circuit Court for Cecil County passed on June 15, 1972.[2] The deed further states that the prior treasurer's deed was erroneous in that it purported to convey two acres of land ". . . then belonging to the heirs of Philip Smeltzer, deceased, instead of the land then owned and assessed to William Cooper's Estate . . . ." Furthermore, the new deed stated the correct quantity of land as ". . . 15.406 acres of land more or less . . . ."

Approximately two years later, on August 2, 1974, Gary Bugg, "Administrator of the Estate of Pink Bugg, Deceased,"[3] brought suit against the Maryland Transportation Authority (MTA) and against, as the Attorney General describes it in his brief, the ". . . mythical John F. Kennedy Memorial Highway Commission." The suit was commenced by the filing of a paper writing entitled "Bill in Equity for Damages." The "Bill" alleged that Pink Bugg was unlawfully ejected from his rightful possession of approximately 13 acres of the land when the State Roads Commission, the predecessor of the MTA, took the land for use in connection with the John F. Kennedy Memorial Highway. Monetary damages in the amount of $10,000,000 were demanded. The MTA demurred to the "Bill." Subsequently, Elvina Bugg was added as a party plaintiff.[4]

---

2. The June 15, 1972 order is a part of the record, as is the deed executed in conformity therewith.

3. Mr. Pink Bugg died in 1973. We observe that the designation of administrators or executors is passé. *See* then Md. Ann. Code art. 93, § 1-101 (n), and then Subtitle VI of art. 93. The proper designation is "personal representative." Md. Ann. Code, Estates and Trusts Art. §§ 1-101 (o), 6-101 *et seq.*

4. In answer to a request for admission of fact, Md. Rule 421, Gary Bugg denied that Elvina Bugg was the lawful wife of Pink Bugg. The deeds to Pink Bugg and Elvina Bugg, however, refer to them as husband and wife. The property at issue was conveyed to the duo as "tenants by the entireties." A tenancy by the entirety can only exist between husband and wife. Mitchell v. Frederick, 166 Md. 42, 170 A. 733 (1934); H. Tiffany, *A Treastise on the Modern Law of Real Property and Other Interest in Land* § 290 (abr. ed. 1940). A deed to unmarried persons as "tenants by the entirety" is a deed as tenants in common. Perrin v. Harrington, 146 App. Div. 292, 130 N.Y.S. 944 (1911).

Judge J. Albert Roney, Jr., sustained the MTA's demurrer to the "Bill" with leave to amend.

Elvina Bugg, individually, and Gary Bugg, as administrator of the estate of Pink Bugg,[5] filed an "Amended Bill of Complaint" against "Maryland Transportation Authority, et al."[6] The "Amended Bill" narrated substantially the same facts as the original Bill except that it charged that there was no adequate remedy at law and if ". . . brought in a law court would be classified as an ejectment proceeding . . ." and, thus, was ". . . immediately precluded by the doctrines of sovereign immunity." Viewing themselves as being without a remedy at law, the complainants stated that the MTA's actions, in building and using a highway running over the complainant's land, constituted ". . . a continuing nuisance . . ." which should be abated, and that the wrong committed by the State against them should be righted.

The complaint further averred that for ". . . at least twelve (12) years last past . . ." the MTA has been endeavoring to ". . . assume . . . sole control . . ." over the 12.5 acres. The complainants prayed, *inter alia,* that the court: (1) enjoin the MTA ". . . from preventing plaintiff's . . . entry upon and over . . . [the] property . . ."; (2) enjoin the MTA's use of the property ". . . without due compensation to plaintiffs . . ."; (3) enjoin MTA ". . . to remove each and every structure [upon the land] and . . . to abate the nuisance . . ."; (4) restrain the MTA ". . . from permitting the unlawful flow of vehicular traffic . . ." over the highway; (5) compel the MTA to regrade the land; (6) order payment from MTA of compensation for the nuisance; and (7) further order payment of ". . . restitution in the amount of $10,000,000.00 . . . ." The MTA promptly filed a "Motion Raising Preliminary Objection," Md. Rule 323b. Judge Roney granted the MTA's motion that the case be dismissed, and this appeal followed.

---

**5.** *See* note 3 *supra.*

**6.** Paragraph number 1 of the Amended Bill of Complaint expressly stated that "John F. Kennedy Memorial Highway Administration" was ". . . sued in its own capacity as such." That defendant, if it exists at all, has not been served and, consequently, is not a party litigant.

In this Court, the appellants raise three questions, namely:

"I. Whether the trial court was in error in granting dismissal based upon a Preliminary Motion · Raising Objection on the ground of governmental immunity, where there had been exercised statutory consent on the part of the State to be sued.

II. Whether the failure of the trial court to distinguish the instant case from the precedent relied on [in] its opinion deprived Appellants of the compensation to which they are justly entitled.

III. Whether the dismissal of the instant case by the trial court deprived the Appellants of their rightful standing to contest, pursuant to State legislation condemnation of their land."

We view the three questions to be but one, namely, did the chancellor err in granting the MTA's motion raising preliminary objection?

From *Bugg v. State Roads Comm'n, supra,* we learn that the MTA's predecessor, in 1962, paid $3,125 for the 12.5 acres to the parties that were determined by the circuit court to be the rightful owners of the tract. The order of June 15, 1972, indicates, however, that the earlier ownership determination by the circuit court may have been wrong.

To support their contention that they are entitled to maintain the instant suit against the State, the appellants point to the Federal and State Constitutions which, by their very language, forbids the sovereign's taking of private property without just compensation.

The Fifth Amendment to the Constitution of the United States proscribed the taking of ". . . private property . . . for public use, without just compensation." The Fourteenth Amendment declares that no ". . . State deprive any person of life, liberty, or property, without due process of law."

In the Maryland Declaration of Rights, Article 23, it is mandated, "That no man ought to be taken or imprisoned or

disseized of his freehold, liberties or privileges, or outlawed, or exiled, or, in any manner, destroyed, or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Article III, § 40, of the Constitution of Maryland, provides that, "The General Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

The weakness in the foundation of the appellant's constitutional argument, and one which causes that base to crumble under close scrutiny, is that there has been full compliance by the MTA with the 5th and 14th Amendments, as well as with Article 23 of the Declaration of Rights, and Article III, § 40, of the Maryland Constitution.

When the State Roads Commission commenced condemnation proceedings in 1962, it joined, as parties defendant, Pink Bugg and Elvina Bugg, along with other persons thought by the Commission to be parties in title. The Commission deposited into the circuit court the sum of $3,125 which it believed was, at that time, a fair and reasonable price for the 12.5 acres of land that it sought to appropriate for public use. The Commission's condemnation suit and simultaneous deposit of monies into the registry of the circuit court prompted the litigation between the Buggs and other purported owners concerning title to the land. That suit, in ejectment, resulted in a judgment against the Buggs. The Commission then had the right, in reliance upon that judgment, to delete the Buggs as defendants from the condemnation proceeding on the grounds that they were not proper parties. The monies paid for the land as a result of the condemnation flowed to the persons who had been adjudicated to be the rightful owners.

Later, efforts by the Buggs to oust the Commission from the 12.5 acres that had been successfully and lawfully condemned met with the same lack of success as the Buggs' defense of the ejectment suit. *Bugg v. State Roads Comm'n, supra.*

Approximately ten years after the condemnation suit had been reduced to final judgment, the Buggs, in a proceeding in which neither the Commission nor its successor, the MTA, was a party, established to the satisfaction of the circuit court that the Buggs had, in fact, actually acquired, in 1958, by a tax sale, the title to the 12.5 acres that had been condemned by the State in 1962. As we have already said, the county treasurer was then ordered to execute and deliver a corrective deed to the Buggs. On the strength of the corrected deed, the appellants instituted the present suit. Why the Buggs waited until 1972 to demonstrate the correct amount of acreage they had purchased at the 1958 tax sale and did not establish that fact in the 1962 ejectment case is not disclosed by the record.

Underlying appellants' argument is the clear implication that they were denied the due process guaranteed them by the Federal and State Constitutions. We, however, do not share the view that the net results in the case *sub judice* are below the Plimsoll mark. We believe due process, in the case now before us, was satiated when a jury of the Buggs' peers determined, on the basis of the evidence presented to it, that the Buggs were not the rightful owners of the 12.5 acres and, thus, rendered a verdict against the Buggs. That the Buggs, for whatever reason, did not then establish, as they later did, that the 1958 deed was incorrect does not deny them due process; they were merely denied the result they desired. Had the evidence adduced at the 1962 ejectment case been the same as that produced in the 1972 case, the verdict, in the ejectment case, may have been different, but we need not speculate on that.

Due process of law does not mean that the litigant need be satisfied with the result. The "Due Process" provision of the Constitution is satisfied when, as here, the sovereign has taken all necessary steps, in an orderly fashion, to acquire the private property sought by it and has paid just compensation to parties then adjudicated to be the legal owners. "Due Process" does not require the sovereign to act as a continuing guarantor of the correctness of the adjudication, nor to pay compensation to a party who is later

proven to be the true owner. A condemnation proceeding is a proceeding *in rem* and is binding upon all persons who are interested in the *res* even though they may not be, technically, parties to the suit. *Record Bldg. & Loan Ass'n v. Safe Deposit & Trust Co.*, 166 Md. 348, 352, 171 A. 43, 45 (1934); *Gardiner v. Mayor & City Council*, 96 Md. 361, 381, 54 A. 85, 87 (1903).

The law is that when a condemnor voluntarily pays to the wrong person, he does so at his peril, but when the compensation is paid pursuant to an award of court, the condemnor is not liable to an adverse claimant even though the court award may be erroneous. *See City of St. Paul v. Certain Lands*, 48 F. 2d 805 (8th Cir. 1931); *Cuyahoga County v. United States*, 294 F. 2d 775 (Ct. Cl. 1961); *United States v. Certain Parcels of Land*, 40 F. Supp. 436 (D. Md. 1941); *In re Sea Beach Ry.*, 148 N.Y.S. 1080 (1907), *aff'd*, 196 N. Y. 533, 89 N. E. 1112 (1909); *Nolan v. City of New York*, 179 Misc. 1011, 39 N.Y.S.2d 360 (1942); 29A C.J.S. *Eminent Domain* § 205, at 919 (1965).

Payment by the condemnor to the court of a sum of money, equivalent to the value placed upon the land sought to be condemned, operates so as to protect the condemnor from claims by adverse claimants who assert title. *Record Bldg. & Loan Ass'n v. Safe Deposit & Trust Co.*, 166 Md. at 353; 29A C.J.S. *Eminent Domain* § 205, at 919 (1965). Payment directly to the court-determined holder of legal title, *ipso facto*, makes the State a bona fide purchaser without notice of adverse claims.[7] *See Brydon v. Campbell*, 40 Md. 331 (1874). Even though the Buggs' 1972 corrected deed relates back to the time of the original tax deed's execution, it cannot divest a bona fide purchaser from possession and title of the land.[8] *Hoffman v. Chapman*, 182 Md. 208, 211, 34 A. 2d 438, 440 (1943); 76 C.J.S. *Reformation of Instruments* § 93a (1952).

---

7. Condemnation proceedings are procedurally governed by Sub-title U of the Maryland Rules of Procedure. Provisions for notification are set forth in Rules U4 and U7. Payment is controlled by Rule U23.
8. To us it seems that the battle the Buggs are waging is directed toward the wrong foe. Their claim, if not now barred by limitations, should be aimed at the persons who received the $3,125.

We hold that the Commission had an absolute right to rely upon the public records which, after the Buggs-McKeever suit in 1962, clearly showed that the Buggs were not a party in title. Events occurring ten years later and demonstrating the the public records relied upon by the Commission were incorrect do not retroactively divest the State of the title that it obtained through full compliance with the condemnation law. *City of St. Paul v. Certain Lands, supra; Cuyahoga County v. United States, supra; United States v. Certain Parcels of Land, supra; In re Sea Beach Ry., supra; Nolan v. City of New York, supra;* 29A C.J.S. *Eminent Domain* § 205, at 919 (1965).

We now turn to a discussion of the motion raising preliminary objection on the ground of sovereign immunity. Md. Rule 323b provided, at that time,[9] in pertinent part:

> "The defense of total or partial charitable or governmental immunity shall be raised by motion pursuant to this Rule. Such motion shall state specifically the grounds for immunity." [10]

The Maryland Transportation Authority was created by Laws 1970, Ch. 526. The legislative enactment is codified as Md. Ann. Code art. 41, § 208C, and it provides in subsection (b):

> "On and after July 1, 1971, all power, authority, obligations, functions, duties and discretion (i) heretofore granted to the State Roads Commission of Maryland relating to the financing, operation, maintenance and repair of . . . the John F. Kennedy Memorial Highway, and any other toll revenue

---

**9.** Revisions, effective April 1, 1976, were made to Md. Rule 323. Rule 323a now enumerates "governmental immunity" as one of the grounds for a motion raising preliminary objection. Rule 323b now reads, in pertinent part:

> "Motions raising defenses of want of necessary parties, governmental immunity or lack of jurisdiction over the subject matter may be filed at any time."

**10.** No contention is here made that the motion raising preliminary objection did not fully comply with the rule, nor would such an argument be valid in this case.

> project authorized and provided for under Article 89B of the Annotated Code of Maryland, . . . are hereby transferred, granted to and vested exclusively in the Maryland Transportation Authority, acting on behalf of the Department of Transportation."

It is beyond question that the Maryland Transportation Authority is an agency of the State and as such enjoys the same sovereign immunity as does the State for the reason that an agency of the State is but the alter ego of the State itself. *See* Md. Rule 323 a9. Appellants acknowledge that the Sovereign may not be sued without its consent [11] but suggest that the State, in this case, waived the sovereign immunity objection by failing to raise it when the State defended the Buggs' 1967 ejectment action involving the same land. Significantly, the appellant cites no authority for the novel assertion that a 1967 defense based, seemingly, upon *res judicata,* arising from the 1962 litigation, cited as *Bugg v. State Roads Comm'n, supra,* could *ad infinitum* bar any other defense in any other suit between the same parties, and we know of no such rule of law. In fact, the contrary rule seems to be the prevailing one. The Court of Appeals in *Dunne v. State,* 162 Md. 274, 288-89, 159 A. 751, 757 (1932), *cert. denied,* 287 U. S. 564 (1932), said flatly, "Courts should not hold that immunity from suit, one of the highest attributes of sovereignty, has been waived, except in cases of positive consent given, or by necessary and compelling implication." *See also Calvert Associates Ltd. Partnership v. Dept. of Employment and Social Services,* 277 Md. 372, 357 A. 2d 839 (1976). There has been, in the case now before us, no "positive consent given" nor are we able to infer from the facts any "necessary and compelling implication" which conceivably call for a refusal to apply the doctrine in this case.

---

11. Laws of 1976, Ch. 450, provides that the defense of sovereign immunity to suits against the State, based on written contracts, will not apply unless otherwise provided by law. The act is effective July 1, 1976, and is only applicable to contracts entered into or executed on or after that date.

Albeit, that the MTA might have been able to interpose the theory of governmental immunity in the 1967 litigation but did not elect to do so, does not preclude it from raising that defense at the appropriate time in a proper case, such as that now before us. Cases holding that the State is immune from suit[12] are legion. *See, e.g., Calvert Associates Ltd. Partnership v. Dept. of Employment and Social Services, supra; Charles E. Brohawn & Bros. v. Board of Trustees*, 269 Md. 164, 304 A. 2d 819 (1973); *Spriggs v. Levitt & Sons*, 267 Md. 679, 298 A. 2d 442 (1973); *Jekofsky v. State Roads Comm'n*, 264 Md. 471, 287 A. 2d 40 (1972); *Godwin v. County Comm'rs*, 256 Md. 326, 260 A. 2d 295 (1970); *Univ. of Md. v. Maas*, 173 Md. 554, 197 A. 123 (1938); *Mayor & City Council v. State*, 173 Md. 267, 195 A. 571 (1937); *Dunne v. State, supra; State v. Wingert*, 132 Md. 605, 104 A. 117 (1918); *State v. Rich*, 126 Md. 643, 95 A. 956 (1915).

The MTA's motion raising preliminary objection was properly granted.

> *Order affirmed.*
> *Costs to be paid by appellants.*

---

12. *But see* note 10 *supra.*