501 A.2d 1351

# W. Mitchell WELSH

v.

# DEPARTMENT OF NATURAL RESOURCES.

## No. 349, Sept. Term, 1985.

Court of Special Appeals of Maryland.

Jan. 9, 1986.

H. Jack Price, Jr. (Wilson and Wilkinson, on brief), Cumberland, for appellant.

Thomas A. Deming, Asst. Atty. Gen., Annapolis (Stephen H. Sachs, Atty. Gen., Baltimore, and Pamela D. Andersen, Asst. Atty. Gen., Annapolis, on brief), for appellee.

Submitted before WEANT, J., and W. ALBERT MENCHINE and JAMES S. GETTY, Associate Judges of the Court of Special Appeals (retired), Specially Assigned.

MENCHINE, Judge.

Condemnation proceedings were filed in 1966 in the Circuit Court for Allegany County in a cause entitled "Spencer P. Ellis, Director of Forests & Parks, acting for and on behalf of the State of Maryland vs. George E. Coffman and Loretta K. Coffman"[1] for the taking of 1132.09 acres of land for public use as a state park. The proceedings were pursued to unappealed final judgment with inquisition duly executed by the jurors for the described property, pursuant to Article 66C § 372 (1957, 1966 Cum.Supp.) and Article 33A

---

1. Legislative grant of the power of eminent domain pursuant to the provisions of Maryland Code Article 33A (1967 Repl.Vol.) was authorized by Maryland Code Art. 66C § 372 (1967 Repl.Vol.).

(1967 Repl.Vol.) of the Annotated Code of Maryland, and Subtitle U of the Maryland Rules of Procedure (1963 Repl. Vol.).

On October 18, 1983, W. Mitchell Welsh (petitioner) instituted an action in the Circuit Court for Allegany County against the Department of Natural Resources, Forests & Parks Services (respondent). The action alleged that he was the owner of 33 acres of land located within the perimeter lines of the lands described in the condemnation proceedings heretofore mentioned; that neither he nor his predecessor in title were parties to those proceedings, nor were they given notice of the same. It was further alleged in the action, as amended, that the petitioner held paramount record title to the 33 acre tract over George E. Coffman and Loretta K. Coffman, the 1966 condemnation action defendants, by reason of the prior recording of a deed from Maza Boor and Jacob Boor to Grafton Brant, a predecessor in title to the said petitioner, said deed having been recorded among the Land Records of Allegany County on March 5, 1878 in Liber 45, folio 613. The title chain through which George E. Coffman and Loretta K. Coffman had derived title to the larger tract stemmed by mesne conveyances from a deed from the said Maza Boor and Jacob Boor to the Coffmans' predecessor in title that had been recorded among the Land Records of Allegany County on March 12, 1878, in Liber 49, folio 678, a date subsequent to the date on which the deed to the 33 acre tract had been granted and conveyed by the same grantors to petitioner's predecessor in title. The later deed made no reference to the earlier disposition by the Boors of the 33 acre tract.

Petitioner's action prayed, *inter alia,* that the court declare and adjudge that the petitioner owned the 33 acre tract in fee simple; that the respondent acquired no right, title or interest in the said 33 acre tract by virtue of the condemnation proceedings; and that respondent be enjoined from asserting claim to the tract.

In its answer, respondent claimed title to the entire tract including the 33 acres claimed by the petitioner, alleging that it had chain of title to that tract, but admitting that petitioner claimed title to the property through the prior recorded deed. In due course, the cause came on for hearing on the merits in the Circuit Court for Allegany County. The trial judge made the following findings of fact:

1. That the 33 acre tract of the petitioner is part of the 1132.09 acre tract that was the subject of the condemnation proceedings.

2. That the deed of the 33 acre tract to petitioner's predecessor in title, by Maza Boor and Jacob Boor, her husband, was recorded among the Land Records of Allegany County prior to the date of the recording of the deed from the same grantors to the predecessor in title of George E. Coffman and Loretta K. Coffman, his wife, the condemnation defendants.

3. That the petitioner's predecessor in title was not given notice of the condemnation proceeding, was not named as a party in the case, nor was his interest identified in the inquisition.

4. That the petitioner testified that he first became aware that the respondent claimed title to the 33 acre tract in 1983.[2]

5. That the predecessors in title of the petitioner paid taxes upon the 33 acre tract for the tax years 1965 through 1975, and that the petitioner has continued to pay taxes thereon until the time of trial below (1983).

The trial judge in the course of his opinion and order then declared:

Generally, in a contest between two competing conveyances of the same property the Maryland Recording Act accords a priority to the deed first recorded. [Maryland

---

2. There was no evidence to the contrary submitted in the cause.

Real Property Code Ann.] § 3.203.[3] The deed from Maza Boor, et vir to the Petitioner's predecessor in title was dated August 20, 1877 and recorded March 5, 1878. The conveyance from Maza Boor, et vir that serves as Respondent's source of title was dated February 23, 1878 and recorded on March 12, 1878. Obviously the Petitioner's source deed was recorded prior to that of the Respondent. If the dispute was limited to an issue of priority through recordation, the case could be resolved through application of the recording statute. However, the Respondent's claim of fee simple ownership is predicated upon its exercise of eminent domain. This necessitates considering the effect of a final order of condemnation on questions of title that are raised subsequent to the proceeding by individuals who were not named as parties in the condemnation case.

The trial court then decided that payment to the wrong claimant did not divest the condemnor of the title it acquired in the *in rem* condemnation proceeding. Judgment was entered in favor of the respondent and petitioner has appealed. We shall reverse.

The record supports the trial court's finding that the record title of the petitioner was paramount to the title of George E. Coffman and Loretta K. Coffman, the condemnation defendants. The general rule of law in such circumstances is thus stated in 27 Am.Jur.2d *Eminent Domain* § 452 (1966), at page 370:

---

**3.** The cited section reads as follows:

§ 3–203. *Subsequent deed; priority of deed first recorded.*

Every recorded deed or other instrument takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date, unless the grantee of the subsequent deed has:

(1) Accepted delivery of the deed or other instrument

 (i) In good faith,

 (ii) Without constructive notice under § 3–202, and

 (iii) For a good and valuable consideration, and

(2) Recorded the deed first.

So, where a party in interest is not named in the petition for condemnation, the proceeding is not binding on him unless the omitted party in some way waives the defect.

Maryland case and statutory law are in accord with that general rule.

In *Andrews v. City of Greenbelt,* 293 Md. 69, 441 A.2d 1064 (1982), the Court adopted with approval the general rule stated in 6 Nichols, *The Law of Eminent Domain* § 26.1134 (3d ed.1981):

[W]hen the condemnation of land is effected by judicial decree, failure to designate in the petition (and to make a party respondent) the owner of any interest in the land taken whose title appears of record or is otherwise ascertainable on reasonable inquiry renders the proceeding ineffectual to transfer such interest to the condemnor * * *.

Article 33A of the Annotated Code of Maryland (1967 Repl.Vol.) codified the general rule in the statute under which the condemnation proceedings had been conducted. Section 9 reads as follows:

§ 9. *Payment of judgment and costs; title acquired.*

(a) Upon payment of the judgment and costs by the plaintiff pursuant to the provisions of Subtitle U of the Maryland Rules, the plaintiff shall at once become vested with the *title, estate or interest of the defendant* in the property condemned.

(b) The title acquired in a condemnation proceeding shall be an absolute or fee-simple title and *shall include all of the right, title and interest of each of the defendants to the proceedings whose property has been so condemned* unless a different title is specified in the inquisition.

(Emphasis added).

 The State contends that the sovereign immunity of the State of Maryland bars the action, citing *Dunne v. State,* 162 Md. 274, 159 A. 751 (1932), *cert. denied,* 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497. Respondent's reliance upon

the cited case is misplaced. The subject litigation is an action by W. Mitchell Welsh against the Department of Natural Resources, an agency of the State of Maryland. In *Dunne, supra*, the suit was against the State of Maryland itself, and the court was careful to point out that the immunity from suit in that action would not extend to an agency of the State if it appeared that it proceeded unconstitutionally or unlawfully, citing with approval from *Hopkins v. Clemson Agricultural College*, 221 U.S. 636, 644, 31 S.Ct. 654, 657, 55 L.Ed. 890 (1910):

> "Other cases might be cited which deny public boards, agents and officers immunity from suit. But the principle underlying the decisions is the same. All recognize that the state, as a sovereign, is not subject to suit; that the state cannot be enjoined; and that the state's officers, when sued, cannot be restrained from enforcing the state's laws, or be held liable for the consequences flowing from obedience to the state's command. But a void act is neither a law nor a command. It is a nullity. It confers no authority. It affords no protection. Whoever seeks to enforce unconstitutional statutes, or to justify under them, or to obtain immunity through them, fails in his defense and in his claim of exemption from suit."

162 Md. at 286, 159 A. at 755–56. The Court then stated: Section 40 of article 3 of the Maryland Constitution has positively and definitely laid down the conditions under which private property can be taken for public use. The Legislature has passed procedural legislation by which the State Roads Commission can acquire property for highways; and in every form of such procedure there has been provided a method for gratifying and complying with the constitutional mandate. Therefore, if the State Roads Commission were acting under and by virtue of the State's right of eminent domain, it, of necessity, must follow one of the modes prescribed which meets the requirements of section 40 of article 3 of the State Constitution; and a taking or appropriation by the State Roads Commission in any other manner is not the exer-

cise, as agents for the State, of its power of eminent domain. The State, in the exercise of that power, can only act lawfully; and any taking of property alleged to have been made by an agency of the State, not done in the mode prescribed by law, is not the act of the State, but the unlawful usurpation by the individual taking or appropriating the property.

*Id.* at 287–88, 159 A. at 756.

The court was told that the State claimed title to the land by an agreement with a former owner. If this be true, it may, under requisite circumstances, present a question of title that can be determined by an action of ejectment against those individuals who unlawfully took and retained possession of the property. *Weyler v. Gibson,* 110 Md. 636, at page 654, 73 A. 261. Another remedy open to owners of property in the position alleged to be occupied by the appellant is that the State's agencies could be retrained from appropriating the property unless and until condemnation proceedings in accordance with law be had, and just compensation awarded and paid or tendered.

Id. at 291, 159 A. at 758.

Respondent in its brief declares that "Appellant Welsh, however, has not alleged that a state official has acted unconstitutionally." The petition, as amended, alleged that Welsh was the owner of property that the respondent had taken by condemnation proceedings to which he was not a party and of which he had no notice. This is the equivalent of an allegation that respondent was in violation of Article 19 of the Declaration of Rights of Maryland, Article III § 40 of the Constitution of Maryland, the Fifth and Fourteenth Amendments to the Constitution of the United States, and Article 33A of the Annotated Code of Maryland (1967 Repl.Vol.) (in effect at the time of the condemnation proceedings).

■ The respondent also contends that the condemnation action was an *in rem* proceeding that operated to vest good title in the government, citing *Bugg v. Maryland Transpor-*

*tation Authority,* 31 Md.App. 622, 358 A.2d 562 (1976), *cert. denied,* 429 U.S. 1082, 97 S.Ct. 1088, 51 L.Ed.2d 529 (1977), *Fulcher v. United States,* 604 F.2d 295 (4th Cir. 1979), *vacated on rehearing,* 632 F.2d 278 (1980) and *D.C. Transit Systems v. State Roads Commission,* 259 Md. 675, 270 A.2d 793 (1970).

Again, reliance on those cases is misplaced. In *Bugg,* that litigant, against whom good title through condemnation had been asserted, had been a party to the original condemnation proceeding and was an unsuccessful litigant in litigation concerning title to the same property subsequent to the condemnation proceedings. Thus, as was stated by Judge Gilbert for this Court, *Bugg* received "full compliance ... with the 5th and 14th Amendments, as well as with Article 23, of the Declaration of Rights, and Article III § 40, of the Maryland Constitution." 31 Md.App. at 629, 358 A.2d 562.

In *D.C. Transit Systems,* Judge Smith, speaking for the Court of Appeals, said: "It is elementary that the condemnor in a condemnation proceeding obtains only such title as was owned by the parties to the condemnation proceeding." *Id.* at 683, 270 A.2d at 797.

In *Fulcher,* the initial decision by a three judge panel was vacated after rehearing by the Court *en banc* (632 F.2d 278 (*Fulcher 2* )). In *Fulcher 2* the claimant had instituted an action against the United States pursuant to the provisions of 28 U.S.C. § 2409a that reads, in pertinent part, as follows: "The United States may be named as a party defendant in a civil action under this section to adjudicate a disputed title to real property in which the United States claims an interest...."

Years before that filing the United States, pursuant to the provisions of 40 U.S.C. § 258a,[4] had condemned the

---

4. 40 U.S.C. § 258a contains the following language: *"[T]itle to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America ...."* (Emphasis added). This language is to be compared with the

lands claimed by Fulcher by proceedings to which he was not a party, but in which service by publication pursuant to Federal Rule 71A(d)(3)(ii)[5] had been made on "unknown owners." The district court had held that 28 U.S.C. § 2409a conferred no jurisdiction upon it and dismissed Fulcher's complaint.

In *Fulcher 2* the decision produced four opinions, the effect of which were thus described by the Court in the leading opinion:

 1. Seven members of the court reverse the judgment of the district court. They hold that the district court has jurisdiction and that the complaint states a claim for relief under 28 U.S.C. § 2409a. Two members of the court dissent.

 2. Seven members of the court hold that the 12-year statute of limitations provided by 28 U.S.C. § 2409a(f) applies. Two members of the court dissent.

 3. Six members of the court hold that the government is vested with indefeasible title. Three judges dissent.

The first two points of the decision are not before us. As to the third point, we believe that the difference in the lan-

---

far more limited provisions of the Maryland Statute (Art. 33A of the Annotated Code of Maryland, 1967 Repl.Vol. cited *supra*) providing that the State shall "become vested with the title, estate or interest of the defendant...."

5. *Service by Publication.* Upon the filing of a certificate of the plaintiff's attorney stating that he believes a defendant cannot be personally served, because after diligent inquiry within the state in which the complaint is filed his place of residence cannot be ascertained by the plaintiff or, if ascertained, that it is beyond the territorial limits of personal service as provided in this rule, service of the notice shall be made on this defendant by publication in a newspaper published in the county where the property is located, or if there is no such newspaper, then in a newspaper having a general circulation where the property is located, once a week for not less than three successive weeks. Prior to the last publication, a copy of the notice shall also be mailed to a defendant who cannot be personally served as provided in this rule but whose place of residence is then known. Unknown owners may be served by publication in like manner by a notice addressed to "Unknown Owners."

guage of the federal statute under which the government acted in *Fulcher 2* (40 U.S.C. § 258a, *supra* at n. 4) and the state statute under which the respondent here acted (Art. 33A, § 9, *supra* ) distinguishes *Fulcher 2* from the subject case.

Moreover, there was no actual knowledge and no service by publication given by the respondent in the subject case. In such circumstances, we find the decision in *United States v. Chatham*, 323 F.2d 95 (4th Cir.1963), to be persuasive here. There, the government brought an action (1) to quiet title to mountainous lands, (2) for an injunction prohibiting further trespasses by the defendants and (3) for the value of timber removed by the defendants. The government in 1936 had completed condemnation proceedings against the land in question, to which the defendant's predecessor in title—W.P. Head—was not a party and who was without actual knowledge of the litigation.

The government in the condemnation proceedings had sought to join all unknown persons claiming an interest in the lands sought to be condemned by published notice that was described by the court as "wholly deficient if intended as notice that the Head lands were being condemned." 323 F.2d at 99. In the course of the court's opinion rejecting the government's right to a quiet title and its claim for injunction, it was said:

> The Government contends, however, and the District Court held, that the proceedings *in rem* effectively vested in the United States title to the lands, though, because of the want of notice, they may not have foreclosed the right of the Heads to just compensation had that right been thereafter asserted in a timely action.

> There are, of course, a number of cases in which procedural defects in condemnation proceedings were held to give rise only to an independent action for just compensation.

Here, however, the condemnation court never acquired *in rem* jurisdiction over the land, and its judgment insofar as it purported to affect the land was void.

323 F.2d at 99–100. The court then stated:

We need not now consider, therefore, whether the Heads might have been limited to a claim for compensation if the only procedural defect had been the absence of actual notice, for the absence of actual notice and the gross misdescription of the land in the published notice, in combination, vitiated the entire proceedings, to the extent they purport to affect the lands of the Heads, their title or possessory rights.

. . . . .

The Heads passed from the picture because Macon County acquired their lands in a tax foreclosure. Many years later it conveyed the lands to the defendants, Chatham. Since we hold that the United States acquired no interest in the land as a result of the condemnation proceeding or its technical possession of the land after 1943, we must conclude that the United States was entitled to no relief respecting its claim to Tract 238–I.

*Id.* at 100–101.

We note that *Fulcher 2, supra,* distinguishes but does not overrule the holding in *Chatham,* 632 F.2d at 281. We note as well that three dissenting judges in *Fulcher 2* commented:

[T]hat *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), and its progeny have long since effectively scuttled the idea that such notice *ipso facto* satisfies due process requirements simply because a proceeding is one traditionally classified as *in rem.* It simply is no longer the law that the existence of *in rem* jurisdiction "over the property itself" relieves of any necessity to give more than fictive notice to persons having interests in the property, in order to extinguish those interests. *Mullane's* central teaching is that *no* judicial proceeding, whatever its traditional classi-

fication as *quasi in rem, in rem* or *in personam,* can validly affect the legal relations of interested persons except as those persons have been given, as their process due, that "notice reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657.

632 F.2d at 287 (Phillips, J., dissenting (emphasis in original)).

In *Matter of Easton,* 214 Md. 176, 188, 133 A.2d 441 (1957), it was said: "The essential elements of 'due process of law' and 'the Law of the Land', as they relate to a judicial proceeding, are notice and an opportunity to defend." In the subject case, petitioner's predecessor in title was not a party to the condemnation proceeding, had no actual notice thereof, and there was no publication of notice of any kind. Petitioner's possession by title of record is not disputed in this record. As applied to the 33 acre tract of the petitioner, the condemnation proceedings were void to the extent that they purport to affect the land of the petitioner, his title or possessory rights.

JUDGMENT REVERSED AND CASE REMANDED TO THE CIRCUIT COURT FOR THE PASSAGE OF A DECREE NOT INCONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE APPELLEE.

GETTY, Judge, dissenting.

Respectfully, I dissent. The majority relies upon the decision in *United States v. Chatham,* 323 F.2d 95 (4th Cir.1963) and attempts to distinguish the holding of the Fourth Circuit in *Fulcher v. United States,* 604 F.2d 295 (4th Cir.1979). In *Chatham,* the United States sought to quiet title to land it allegedly acquired through condemnation. Actual notice of the condemnation proceeding was not given by the government to the owners of the land despite the fact that the land was continuously occupied and farmed for more than twenty-five years prior to the con-

demnation proceeding. The only published notice issued by the government was wholly deficient as to the true owners, because it related to land located on a different river and informed the reader that the lands being condemned belonged to the R.Y. McAden Estate; Chatham's predecessors in title were never mentioned.

The Fourth Circuit characterized the actions of the government as "outrageously inexcusable" in proceeding with the condemnation without any effort to develop full information as to the ownership of the land being acquired. Consequently, the petition to quiet title was denied.

I have no problem with the result reached in *Chatham,* but it seems clear to me that the result was dictated by the bizarre set of facts presented therein none of which are even remotely present in the case before us. The general rule, I submit, is set forth in *Fulcher.* An action to quiet title was brought by Fulcher pursuant to 28 U.S.C. Sec. 2409a to establish his title to a parcel of real property that was the subject of a condemnation proceeding eighteen years earlier. He alleged that a diligent title search would have revealed that the subject property was deeded to his ancestors ten years before the deed on which the condemnation was based. He also established that the deed to his ancestors was recorded prior to the second deed. In support of his claim, Fulcher relied upon the holding in *Chatham.*

The Fourth Circuit disagreed and pointed out that "Chatham is wholly distinguishable from plaintiff's case," due to "outrageously inexcusable" conduct by the government in *Chatham.* The Court reiterated the general rule that the power of government to extinguish private rights is an attribute of sovereignty and as such is superior to and independent of private rights of property. The limitation on the sovereign right requires adherence to due process under the Fifth Amendment and just compensation. See *Albert Hanson Lumber Co., v. United States,* 261 U.S. 581, 43 S.Ct. 442, 67 L.Ed.2d 809 (1923).

Condemnation proceedings, the Court emphasized, are against property and do not constitute the taking of rights of designated persons. Where property is condemned, the amount paid for it stands in the place of the property and represents all interests in the property acquired. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). See *Schroeder v. City of New York*, 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), a due process case where notice by publication was deemed insufficient, but the Supreme Court did not question the condemning body's title to the property and limited its discussion to the due process required on a claim for compensation for the taking.

The Court in *Fulcher* recognized that the substance of the plaintiff's complaint was that payment was made to the wrong party; the proper remedy, the Court concluded, was a claim for compensation under the Tucker Act. The same reasoning is appropriate herein. Nothing the State did was unreasonable, it relied upon a title search and gave notice to the parties who were listed as the record owners of the property. In condemning some 1200 acres, the State was unaware, as was everyone else involved, that 33 acres had been conveyed from the larger tract in 1877 and that the deed therefor was recorded in 1878 five days prior to the recording of the deed conveying the remainder of the property.

The 33 acres was not improved and bore no outward indicia of adverse ownership. The condemnation occurred in 1966 and the plaintiff's herein did not discover the State's claim until 1983 in a chance discussion with a forester concerning timber. In the interim, nineteen years have elapsed, Rocky Gap State Park has been fully operational for many years. In my view, the facts of this case track *Fulcher*[1] and are completely foreign to the situation before

---

1. In a revision of its opinion, the majority dwells upon the rehearing in *Fulcher*, cited as 632 F.2d 278, which was heard by the Court *en banc*. My brothers quote at length from the dissent in *Fulcher* 2 which represents the views of only three of the nine member *en banc*

the court in *Chatham*. Accordingly, I would hold that the State has title to the parcel in question and that the plaintiff's are entitled to compensation for the taking. It makes no sense to me to require a second condemnation proceeding where the appropriate remedy is reimbursement.

Even *Chatham* recognizes that which I consider to be the proper result. That Court stated:

"In other situations where the land has actually been seized by the condemning authority, particularly if it has been improved or devoted to public use, the public interest may be protected without sacrifice of private rights by affording a present remedy for the determination of just compensation."

For the benefit of the parties, I suggest the following: The State obtained 1181 acres for $82,000.00; thirty-three acres of that total were owned by the plaintiff's predecessors. The price paid for this mountain land was approximately $69.44 per acre. The plaintiffs are entitled to that sum plus interest from the taking, September, 1966, until February, 1985, when judgment was entered by the Circuit Court which, had the claim been for reimbursement rather than to establish title, would have been just compensation.

---

Court. The majority of six held that the government held indefeasible title to the property in question and the claimant was entitled to a claim for just compensation plus interest. The majority then suggests that the language of the federal statute, 40 U.S.C. 258a, is different than that set forth in Article 33A, Sec. 9, and that the present case is thereby different from *Fulcher* 2. The difficulty I encounter with this reasoning is that the federal statute cited by the majority was enacted in 1931 and was the existing law in *Chatham* and in both *Fulcher* cases. I fail to see how it can be disregarded as to *Chatham* and employed to distinguish *Fulcher* 1 and 2.