521 A.2d 313

# DEPARTMENT OF NATURAL RESOURCES
v.
## W. Mitchell WELSH.

No. 28, Sept. Term, 1986.

Court of Appeals of Maryland.

Nov. 24, 1986.

Pamela D. Andersen, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Thomas A. Deming, Asst. Atty. Gen., on brief), Annapolis, for appellant.

H. Jack Price, Jr. (Wilson & Wilkinson, on brief), Cumberland, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of the Court of Appeals of Maryland (retired) Specially Assigned.

MARVIN H. SMITH, Judge Retired, Specially Assigned.

We shall here hold that the doctrine of sovereign immunity does not prevent the bringing of a suit to quiet title by appellee W. Mitchell Welsh against the Department of

Natural Resources (the Department). We shall further hold that in an earlier eminent domain proceeding the Department did not acquire the title of Welsh's predecessors to the land here in dispute. Accordingly, we shall affirm the judgment of the Court of Special Appeals in *Welsh v. Dep't. of Natural Resources,* 65 Md.App. 710, 501 A.2d 1351 (1986).

## I

The facts here are not in dispute. An agreed statement of facts was filed in the Court of Special Appeals pursuant to Maryland Rule 1026 e.

In 1875 Maza Boor acquired a tract of land in Allegany County known as "Vevay Resurveyed," said to contain 1,228⅝ acres. On August 20, 1877, Mrs. Boor and her husband conveyed 33 acres from this tract to Grafton Brant. On November 20, 1877, Brant conveyed this 33 acre parcel to William Welsh. The deed to Brant and the deed to Welsh were both recorded on March 5, 1878. Title to the land ultimately devolved upon William R. Welsh and Rosa Welsh by intestate succession. Rosa Welsh devised her interest to William R. Welsh, thereby vesting him with sole title to the land. Her will was probated in Allegany County in 1950. William R. Welsh and his wife conveyed the property in question to W. Mitchell Welsh under date of December 15, 1975.

Maza Boor and her husband conveyed 1,000 acres, described as a part of "Vevay Resurveyed" to Delilah Boor by deed dated February 20, 1878, and recorded on March 12, 1878. It will be noted that this date of recordation is seven days after the recordation of the deed from Maza Boor and her husband to Grafton Brant, Welsh's predecessor in title. Through a series of conveyances this 1,000 acre tract came into the possession of George E. Coffman and Loretta K. Coffman, his wife, by deed dated July 15, 1940. The description of the Coffman land apparently includes within its metes and bounds the land of Welsh.

A condemnation proceeding against the Coffman land was instituted in the Circuit Court for Allegany County by Spencer P. Ellis, Director, Department of Forests and Parks "acting for and on behalf of the State of Maryland." The Coffmans were named defendants. No parties were named as defendants in the proceeding other than the Coffmans. The inquisition was rendered by the jury on September 28, 1966.

The land in question constitutes a part of Rocky Gap State Park in Allegany County. Welsh became aware of the State's claim to the property in 1983 when he was discussing a timber report with an employee of the Department. He brought a suit against the Department in the Circuit Court for Allegany County to quiet title to the land in question. The earlier condemnation proceedings were conducted pursuant to the provisions of Maryland Code (1957, 1966 Cum.Supp.) Art. 33A. Testimony was presented to the effect that for purposes of the condemnation title had been searched back sixty years, that this did not reveal the conveyance of the 33 acre tract, and that sixty years was the standard in the industry for a search. There was also evidence that the Welsh tract did not appear on the tax maps which, of course, are not official as to title.[1] Testimony was to the effect that there were no buildings on the property or other outward signs of ownership.

In the circuit court the Department interposed the defense of sovereign immunity. The trial court overruled this defense. According to the intermediate appellate court the trial judge made the following findings of fact:

"1. That the 33 acre tract of [Welsh] is part of the 1132.09 acre tract that was the subject of the condemnation proceedings.

---

1. For the benefit of the generation of lawyers who have come to the Bar since 1969 we point out that prior to the recodification of Code (1957) Art. 93 by ch. 3 of the Acts of 1969, now Code (1974), Estates and Trusts Article, title passed by intestate succession. There was no conveyance by a personal representative, as is now the case, where one had died intestate.

"2. That the deed of the 33 acre tract to [Welsh's] predecessor in title, by Maza Boor and Jacob Boor, her husband, was recorded among the Land Records of Allegany County prior to the date of the recording of the deed from the same grantors to the predecessor in title of George E. Coffman and Loretta K. Coffman, his wife, the condemnation defendants.

"3. That [Welsh's] predecessor in title was not given notice of the condemnation proceeding, was not named as a party in the case, nor was his interest identified in the inquisition.

"4. That [Welsh] testified that he first became aware that the [Department] claimed title to the 33 acre tract in 1983.

"5. That the predecessors in title of [Welsh] paid taxes upon the 33 acre tract for the tax years 1965 through 1975, and that [Welsh] has continued to pay taxes thereon until the time of trial below (1983)." 65 Md.App. at 713, 501 A.2d at 1353 (footnote omitted).

The circuit court determined that the Department had acquired title to the land in question by the condemnation proceeding. The Court of Special Appeals reversed. It held that the doctrine of sovereign immunity did not prevent the bringing of the action and that "[a]s applied to the 33 acre tract of [Welsh], the condemnation proceedings were void to the extent that they purport to affect the land of [Welsh], his title or possessory rights." 65 Md.App. at 722, 501 A.2d at 1357.

We granted the Department's petition for a writ of certiorari in order that we might address the important public questions here presented.

## II

Under the doctrine of sovereign immunity, neither a contract nor a tort action may be maintained against the

State unless specific legislative consent has been given and funds (or the means to raise them) are available to satisfy the judgment. *Austin v. City of Baltimore*, 286 Md. 51, 56 n. 3, 405 A.2d 255, 258 n. 3 (1979); *Board v. John K. Ruff, Inc.*, 278 Md. 580, 590–91, 366 A.2d 360, 366 (1976); *University of Maryland v. Maas*, 173 Md. 554, 558–59, 197 A. 123, 125 (1938). The General Assembly must waive immunity "either directly or by necessary implication." *Katz v. Washington Sub. San. Comm'n*, 284 Md. 503, 507–08, 397 A.2d 1027, 1030 (1979). The parties are in agreement that there is no "direct" legislative consent to suits such as the one in the case at bar. We have consistently declined to abrogate sovereign immunity by judicial fiat.[2] *See, e.g., Austin*, 286 Md. at 54–58, 405 A.2d at 257–59 (and cases there cited); *Katz*, 284 Md. at 512–13, 397 A.2d at 1032; *Ruff*, 278 Md. at 584, 366 A.2d at 362–63; *Jekofsky v. State Roads Comm'n*, 264 Md. 471, 287 A.2d 40 (1972); *Dunne v. State*, 162 Md. 274, 159 A. 751, *appeal dismissed and cert. denied*, 287 U.S. 564, 53 S.Ct. 23, 77 L.Ed. 497 (1932). Judge Orth explained for the Court in *Ruff*:

> "The frequent and increasingly vigorous attacks upon the doctrine have been no more persistent than our refusal to abrogate or modify it by judicial fiat. We have consistently adhered to the view that '... it is desirable and in the public interest that any change in the doctrine of sovereign immunity should come from the legislative branch of the State Government rather than from the judicial branch inasmuch as there are fiscal considerations, administrative difficulties and other problems in

**2.** As Judge Eldridge pointed out in part I of his concurring and dissenting opinion in *Austin*, 286 Md. at 69, 405 A.2d at 264, the origins of the doctrine in Maryland do not stem from judicial fiat. By ch. 53 of the Acts of 1786 provision was made for suits against the State. However, this Act was repealed by ch. 210 of the Acts of 1820.

Provision is now made in Code (1984) §§ 12–101 to –110, State Government Article, for bringing certain tort claims against the State, and Code (1984) §§ 12–201 to –204, State Government Article, for certain contract claims against the State. These provisions are not applicable to the case at bar.

balancing the rights of the State and its agencies with new possible rights of the individual citizens, which can far better be considered and resolved by the legislative branch than by the judiciary of the State.' *Jekofsky v. State Roads Comm'n,* 264 Md. 471, 474, 287 A.2d 40, 42 (1972)." 278 Md. at 584, 366 A.2d at 362–63.

Indeed, the State's agencies may not waive sovereign immunity, either affirmatively or by failure to plead it. *Id.* at 583, 366 A.2d at 362; *Bd. of Education v. Alcrymat Corp.,* 258 Md. 508, 516, 266 A.2d 349, 353 (1970).

Notwithstanding strict adherence to the doctrine, this Court long ago recognized that agents of the State do not enjoy immunity with respect to a wrongful taking of property without just compensation. *Weyler v. Gibson,* 110 Md. 636, 73 A. 261 (1909). In that case the directors of the Maryland Penitentiary had taken possession of a street, along with abutting properties, and erected a new wing of the Penitentiary thereon. The street bed and abutting properties were privately owned. Although the directors lawfully acquired title to the abutting properties, they made no effort to condemn or otherwise acquire the underlying title to the street bed. The owners of the street brought an ejectment action against the directors and the warden. Judgment was entered for the owners against the warden.[3] The warden asserted on appeal with respect to immunity that the suit was not maintainable because it was "in effect a suit against the State to recover the possession of property in the actual use by the State for police and State purposes.…" *Id.* at 653, 73 A. at 263.

The Court responded to this latter assertion with a discussion of the Maryland and Federal constitutional provisions prohibiting the taking of private property for public use without just compensation. Judge Burke then said for the Court:

---

**3.** The trial court dismissed the action against the directors upon the basis of sovereign immunity. The owners apparently did not appeal their dismissal.

"It is conceded that no suit can be brought against the State, without its consent. This immunity of the State from suit rests upon grounds of public policy, and is too firmly fixed in our law to be questioned. But it would be strange indeed, in the face of the solemn constitutional guarantees, which place private property among the fundamental and indestructible rights of the citizen, if this principle could be extended and applied so as to preclude him from prosecuting an action of ejectment against a State Official unjustly and wrongfully withholding property, by the mere fact that he was holding it for the State and for State uses.

"It is easy to see the abuses to which a doctrine like that would lead. That such is not the law has been conclusively settled by *United States v. Lee,* 106 U.S. [196] [1 S.Ct. 240, 27 L.Ed. 171]; *Tindel [Tindal] v. Wesley,* 167 U.S. 204 [17 S.Ct. 770, 42 L.Ed. 137 (1897)]; *Smith v. Reeves,* 178 U.S. 438 [436] [20 S.Ct. 919, 44 L.Ed. 1140 (1900)]; 10 *Am. and Eng. Ency. of law,* 528." 110 Md. at 654, 73 A. at 263–64.

We referred to *Weyler* in *Walker v. Acting Director,* 284 Md. 357, 364, 396 A.2d 262, 265–66 (1979), and *Calvert Associates v. Department,* 277 Md. 372, 378, 357 A.2d 839, 842 (1976).

*Dunne,* 162 Md. 274, 159 A. 751, involved a claim that the State had taken private property for the purpose of widening a road without condemnation and payment of compensation. The owner sued the State directly, arguing that sovereign immunity had been waived by statute in that case. Our predecessors disagreed with the owner's interpretation of the statute and affirmed the trial court's sustaining a demurrer by the State. The Court reviewed several cases from other jurisdictions involving the principle that sovereign immunity does not shield government agents from unlawful or unconstitutional actions. Judge W. Mitchell Digges said for the Court:

"[I]f the State Roads Commission were acting under and by virtue of the State's right of eminent domain, it, of

necessity, must follow one of the modes prescribed which meets the requirements of section 40 of article 3 of the State Constitution; and a taking or appropriation by the State Roads Commission in any other manner is not the exercise, as agents for the State, of its power of eminent domain. The State, in the exercise of that power, can only act lawfully; and any taking of property alleged to have been made by an agency of the State, not done in the mode prescribed by law, is not the act of the State, but the unlawful usurpation by the individual taking or appropriating the property.... Neither the individuals who appropriated the property nor those constituting the State Roads Commission are immune from suit unless they can show that the act was that of the State, acting through them; and in order to do this, they must show that they proceeded in the manner prescribed by law, because it cannot be the act of the State unless it be in accordance with law." 162 Md. at 287–88, 159 A. at 756.

It will be noted that in *Weyler* the Court relied upon *United States v. Lee,* 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171 (1882). *Lee* was succinctly summarized for the Court by Justice Stewart in *Malone v. Bowdoin,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962):

"In that case the Virginia estate of General Robert E. Lee had been acquired by the United States for nonpayment of taxes, although the taxes had in fact been tendered by a third party. An ejectment action was brought against the governmental custodians of the land, upon which a federal military installation and a cemetery had been established. The trial court found that the tax sale had been invalid, and that title to the land was in the plaintiff. This Court upheld a judgment in favor of the plaintiff upon the trial court's finding that the defendants' possession of the land was illegal, holding that a suit against them under such circumstances was not a suit against the sovereign." 369 U.S. at 645–46, 82 S.Ct. at 982, 8 L.Ed.2d at 170.

The Department contends that *Lee* was substantially narrowed, if not overruled by subsequent decisions. *See Malone,* 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962); *Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). Both of the cases cited by the Department dealt with federal officers' immunity and federal statutes. In *Larson,* the plaintiff sought to enjoin the head of the War Assets Administration from selling certain coal to anyone other than the plaintiff. According to the plaintiff, it had a valid contract to purchase the coal, yet the Administration refused to deliver it. *Larson, supra,* 337 U.S. at 684, 69 S.Ct. at 1458–59, 93 L.Ed. at 1633. *Malone,* on the other hand, was an ejectment suit against a United States forest service officer for land which the plaintiffs/remaindermen claimed had been improperly "devised" in fee by a mere life tenant some eighty-nine years before the suit. *Malone, supra,* 369 U.S. at 644 n. 2, 82 S.Ct. at 981 n. 2, 8 L.Ed.2d at 169 n. 2.[4] Both actions were held barred by sovereign immunity on the ground that the plaintiffs did not contend that the officers were acting in an unconstitutional manner or ultra vires their delegated authority. *Larson, supra,* 337 U.S. at 691, 69 S.Ct. at 1462, 93 L.Ed. at 1636; *Malone, supra,* 369 U.S. at 648, 82 S.Ct. at 984, 8 L.Ed.2d at 171–72. *Larson* (reaffirmed in *Malone*) did, in fact, limit *Lee.* The *Malone* Court expressed the rule as follows:

> "[T]he action of a federal officer affecting property claimed by a plaintiff can be made the basis of a suit for specific relief against the officer as an individual only if the officer's action is 'not within the officer's statutory powers or, if within those powers, only if the powers, or their exercise in the particular case, are constitutionally void.'" 369 U.S. at 647, 82 S.Ct. at 983, 8 L.Ed.2d at 171

---

**4.** "Devised" is the term used by the Supreme Court in that case. "Conveyed" must be what was intended, however, since the case states that the life tenant died in 1928 and title passed in 1873 "to mesne grantors of the United States, which had acquired title in 1936."

(quoting *Larson*, 337 U.S. at 702, 69 S.Ct. at 1467, 93 L.Ed. at 1642).

Where the claim is that the officer exceeded or violated his statutory authority, the plaintiff should "set out in his complaint the statutory limitation on which he relies." *Larson*, 337 U.S. at 690, 69 S.Ct. at 1461, 93 L.Ed. at 1636; *Malone*, 369 U.S. at 648 n. 9, 82 S.Ct. at 984 n. 9, 8 L.Ed.2d at 172 n. 9. From the language quoted in *Malone*, it is clear that the Court has not overruled *Lee*, but has simply sharpened its focus.

The Department likewise contends that the principle enunciated in *Dunne* and applied in *Weyler* has been eroded by *Katz*, 284 Md. 503, 397 A.2d 1027, and *Ruff*, 278 Md. 580, 366 A.2d 360. Neither case lends support to this assertion. In *Katz* we held that the Washington Suburban Sanitary Commission is a State agency, that the General Assembly directly waived the Commission's immunity, and that the General Assembly specifically authorized the Commission to raise funds for the satisfaction of judgments. *Katz*, 284 Md. at 512, 514–15, 397 A.2d at 1032, 1033–34. *Ruff* addressed similar issues. In that case, a general contractor sought declaratory relief against the Board of Trustees of Howard Community College concerning the parties' rights and duties under a contract. We held that the Board had breached its contract with Ruff but remanded the case for a factual determination of whether funds were available to pay a judgment. If not, the Board was immune. In short, *Katz* and *Ruff* have no impact on *Weyler* or *Dunne*.

■ The Department further argues that *Weyler* should be distinguished on the grounds that (1) the defendant in *Weyler* was an individual rather than an agency and (2) the suit was one for ejectment rather than one to quiet title. On the first point, appellant correctly notes that actions have been permitted against State officials where the same action could not have been brought against the sovereign. The rationale initially advanced the support this distinction was that a State official acting in violation of the Constitution or certain other laws could not be acting for the State, and

therefore was not entitled to the immunity of the sovereign. *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This Court recognized the distinction in *Davis v. State*, 183 Md. 385, 393, 37 A.2d 880 (1944). Recognizing this principle in the context of eminent domain, this Court said in *Dunne, supra*, 162 Md. at 288, 159 A. 751:

> The State, in the exercise of [the power of eminent domain] can only act lawfully: and any taking of property alleged to have been made by an agency of the State, not done in the mode prescribed by law, is not the act of the State, but the unlawful usurpation by the individual taking or appropriating the property.

Where the State claims superior title, this Court pointed out that an action of ejectment could be brought against "those individuals who unlawfully took and retained possession of the property." *Id.* at 291, 159 A. 751. Furthermore and more directly touching on the point before us, the *Dunne* court added that

> [a]nother remedy open to owners of property in the position alleged to be occupied by the appellant is that the State's agencies could be restrained from appropriating the property unless and until condemnation proceedings in accordance with law be had, and just compensation awarded and paid for tendered. *Id.*

Accordingly, in the context of the facts presented by this case, where it is alleged that a State agency and its officials have taken private property without just compensation, we hold that an action to quiet title may properly be brought against the public officials or the State agency.

■ Actions to quiet title are provided for in Code (1974, 1981 Repl.Vol.) § 14–108(a), Real Property Article:

> "Any person in actual peaceable possession of property, or, if the property is vacant and unoccupied, in constructive and peaceable possession of it, either under color of title or claim of right by reason of his or his predecessor's adverse possession for the statutory period, when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property,

or any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit in equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim."

The statute speaks of actual or constructive peaceable possession by the plaintiff. In an ejectment action the appropriate allegation is that the defendant retains possession, having ejected the plaintiff. Rule T 40. The primary relief in an action to quiet title consists of an equitable decree removing any cloud from the plaintiff's title. In ejectment a successful plaintiff may recover both possession and damages. For purposes of determining whether sovereign immunity exists, we see no distinction between the two types of action.

■ As stated by Judge Digges for the Court in *Dunne*, 162 Md. at 288, 159 A. at 756, "any taking of property alleged to have been made by an agency of the State, not done in the mode prescribed by law, is not the act of the State, but the unlawful usurpation by the individual taking or appropriating the property." Based upon the holding in *Weyler*, 110 Md. 636, 73 A. 261, in the first decade of this century, and the language used by the Court in *Dunne* in the fourth decade, we are of the view that in this latter portion of the twentieth century a property owner in the position of Welsh should be permitted to maintain an action against the Department to quiet title.

### III

On the merits, the Department contends that it reasonably complied with eminent domain law and that, as a consequence, it acquired title to the tract in question. It recognizes, as it must, that U.S. Const. amend. V prohibits the taking of property for public use without compensation, and that Md. Const. art. III, § 40 provides: "The General

Assembly shall enact no Law authorizing private property, to be taken for public use, without just compensation, as agreed upon between the parties, or awarded by a Jury, being first paid or tendered to the party entitled to such compensation."

The attempted acquisition here was under the provisions of then Code (1957) Art. 33A. Art. 33A, § 9, recodified without substantial change as Code (1974, 1981 Repl. Vol.) § 12–108, Real Property Article, provided:

"(a) *Upon payment of the judgment* and costs by the plaintiff pursuant to the provisions of Subtitle U of the Maryland Rules, the *plaintiff shall at once become vested with the title, estate or interest of the defendant* in the property condemned.

"(b) The title acquired in a condemnation proceeding shall be an absolute or fee-simple title and shall *include all of the right, title and interest of each of the defendants to the proceedings* whose property has been so condemned unless a different title is specified in the inquisition." (Emphasis added.)

Rule U4 b, in turn, required that the condemnor name as defendants all persons whose interest was sought to be condemned:

"b. *Defendants.*

A proceeding for condemnation shall be brought against all persons whose interest in the property is sought to be condemned, including any spouses having an inchoate right of dower, whether such persons are known or unknown, and such persons shall be designated as defendants."

It was incumbent upon the Department to designate as defendants the record owners of the tract in question. Under the statute and the rules it acquired only the "title, estate or interest of the defendant[s]" so designated, in this instance, the Coffmans.

The Court of Special Appeals relied upon our decisions in *Andrews v. City of Greenbelt*, 293 Md. 69, 441 A.2d 1064 (1982), and *D.C. Transit Systems v. S.R.C.*, 259 Md. 675,

270 A.2d 793 (1970). In the former the trial judge ordered that condominium unit owners and mortgagees be named as defendants in a suit to condemn a portion of a condominium parking lot. Subsequently, however, the judge omitted the individuals' names from the inquisition form, instructing the jury to determine a lump sum award in favor of the council of unit owners. We held that under Rule U4 b the proceeding must be against all persons whose interest in the property is sought to be condemned and hence that this was error. We relied, in part, on the following language from 6 Nichols, *The Law of Eminent Domain* § 26.1134 (3d ed. 1981):

> "[W]hen the condemnation of land is effected by judicial decree, failure to designate in the petition (and to make a party respondent) the owner of any interest in the land taken whose title appears of record or is otherwise ascertainable on reasonable inquiry renders the proceedings ineffectual to transfer such interest to the condemnor." 293 Md. at 81, 441 A.2d at 1072.

In *D.C. Transit Systems* one of the issues was whether the State Roads Commission should be allowed to amend a condemnation petition in order to allege that the original defendant owned only an easement and to name additional parties defendant. In holding that the amendment could be made we said:

> "It is elementary that the condemnor in a condemnation proceeding obtains only such title as was owned by the parties to the condemnation proceeding. See *Nichols on Eminent Domain*, § 5.2[2] (Rev. 3rd ed. (Sackman), 1965), which states:
>
> > 'If the wrong person is designated as owner and is paid the award and the real owner is not made a party, the proceeding is not *res adjudicata* as against the latter, and he may recover compensation from the condemnor before his land can be lawfully occupied. When, however, the land of unknown owners is condemned, and after a lapse of several years a claimant appears and obtains the award by a decree of the court, the only

remedy of the true owner is an action against the first claimant for money had and received.'

In other words, the Commission could not obtain from the Transit Company a fee simple title to land in this proceeding if the Transit Company owned only an easement." 259 Md. at 683–84, 270 A.2d at 797.

The Department relies on such cases as *Bldg. & Loan Assn. v. Safe Dep. & Tr. Co.*, 166 Md. 348, 171 A. 43 (1934), and *Gardiner v. Baltimore City*, 96 Md. 361, 54 A. 85 (1903), which emphasize the in rem nature of condemnation proceedings. Those cases arose, however, under statutes which differ from that under which this proceeding was brought.

■ The predecessors in title of Welsh were not parties to the Department's condemnation proceeding. Under the clear language of Art. 33A, § 9(b), what the Department acquired was "all of the right, title and interest of each of the defendants to the proceeding[ ]...." It follows, therefore, that the interest of Welsh in the 33 acres in dispute in the case at bar has not been acquired by the Department.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.